19051

Russell M. WHITMIRE, Jr., Plaintiff-Respondent, v. NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant-Appellant, and National Grange Insurance Company, Defendant-Respondent, and Ernest Lee Raines and Robert Lee Cox.

(174 S. E. (2d) 391)

*Messrs. James H. Watson* and *Joseph E. Major,* of Leatherwood, *Walker, Todd & Mann,* of Greenville, *for Defendant-Appellant, Nationwide Mutual Insurance Company,*

*Messrs. Haynesworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Defendant-Respondent, National Grange Insurance Company,* and *Abrams, Bowen, & Townes,* of Greenville, *for Plaintiff-Respondent, Russell M. Whitmire, Jr.,*

*Messrs. James H. Watson* and *Joseph E. Major,* of Leatherwood, *Walker, Todd & Mann,* of Greenville, *for the Defendant-Appellant, Nationwide Mutual Insurance Company, in Reply,*

May 11, 1970.

LEWIS, Justice.

This action for declaratory judgment was brought to determine the liability of the defendant insurance companies, under the uninsured motorist provisions of their respective policies, for a judgment obtained by plaintiff against an uninsured motorist.

Plaintiff was injured when the parked automobile of one Ernest Lee Raines, in which plaintiff had been riding as a guest, was struck by an automobile driven by one Robert Lee Cox. The injuries were received immediately after plaintiff had left the Raines vehicle. In an action brought against both Raines and Cox, plaintiff recovered judgment in the amount of $10,000.00 against Cox alone. Cox was an uninsured motorist.

Defendant Nationwide Mutual Insurance Company had in effect an automobile liability policy covering the automobile of Raines, in which plaintiff was a passenger, and the defendant National Grange Insurance Company had in effect a similar policy insuring the plaintiff. The policies of Nationwide and Grange contained identically worded uninsured motorist provisions. The coverage afforded by each policy was sufficient to pay the judgment obtained by plaintiff.

Upon the failure of the insurance carriers to pay, plaintiff brought this declaratory judgment action against both to determine the liability of each for the payment of the judg-

ment. Both insurers denied liability, but on different grounds. Grange, which issued the policy to plaintiff, admitted coverage but refused to pay on the ground that Nationwide, which insured the Raines vehicle in which plaintiff had been riding, afforded primary coverage for the loss. Grange argued that, since the primary coverage afforded by Nationwide was ample to pay the entire loss, it (Grange) was not liable in any amount. Nationwide denied liability upon the ground that, since plaintiff had left the Raines vehicle when the injuries were sustained, plaintiff was not an insured under its policy. The alternative position was taken by Nationwide that, if plaintiff was an insured under its policy, it should not be required to pay the entire judgment but that the liability should be prorated between the two insurers.

The parties waived a jury trial and submitted all issues to the court for determination. The lower court held that plaintiff was an insured under the policy of Nationwide and that its policy provided primary coverage for the loss. Since the loss was within the primary coverage, judgment was awarded against Nationwide for the entire amount. This appeal by Nationwide followed.

The questions to be decided are (1) whether plaintiff was an insured under Nationwide's policy and, if so, (2) whether plaintiff's loss should be paid entirely by Nationwide or pro rata by it and Grange. The exceptions challenge, first, the finding that plaintiff was an insured under the policy of Nationwide.

The uninsured motorist endorsement in the policy of Nationwide includes in the definition of an insured "any other person while occupying an insured automobile." The word *occupying* as used in the policy is defined as "in or upon or entering into or alighting from" the insured vehicle.

Therefore, in order for plaintiff to qualify as an insured under the policy, he must have been *occupying* the insured vehicle at the time of his injury. He would have been so

considered, if at the time of injury, he was *in* or *upon* or *entering into* or *alighting from* the insured automobile. It is conceded that he was not *in* or *upon* or *entering into* the vehicle. The contention is that plaintiff was *alighting from* the automobile insured by Nationwide and was, therefore, an insured under its policy. The following facts, taken substantially from the order of the trial judge, are not challenged by any exception.

On or about April 27, 1968 plaintiff and a Mr. Medlin made repairs to a 1960 Corvair automobile owned by Ernest Lee Raines. After completing the repairs, Raines drove Plaintiff, plaintiff's son, and Medlin to Medlin's home in Marietta, South Carolina. This occurred at night. Medlin lived on the west side of Slater Road in the town and, when they arrived at his home, Raines parked on the side nearest the Medlin yard, which was on the driver's left of the highway, with his car approximately half on and half off the paved portion and left his headlights burning. This placed the Raines automobile heading in a northerly direction on the southbound side of the road. There were other and safe places to park and plaintiff called Raines' attention to the danger in so parking the car.

The Corvair, in which they were riding, was a two door automobile and plaintiff and his son were seated in the rear, with Medlin occupying the front seat with Raines, the driver. Since this was a two door car, the normal exit for passengers was the right side which, in this case, made the passenger leave the vehicle on to the travelled portion of the highway. Therefore, in order to get to the shoulder of the road, it was necessary for the passengers to leave from the right side and then go either around the front or the rear of the Raines vehicle.

Shortly after Raines parked the car, Medlin left through the right door, followed by plaintiff and his son. When plaintiff left the car he turned to his right and proceeded to the rear of the vehicle in order to reach the shoulder of the

road and the Medlin yard. In doing so, he walked very close to the car—"close enough to have touched it." As plaintiff reached the rear bumper, he heard the noise of an approaching vehicle and about the same time saw it through the rear window and the windshield of the Raines car. He realized that a collision between the two vehicles was imminent and started running toward the Medlin yard. The approaching vehicle was operated by Robert Lee Cox, the uninsured motorist. The Cox automobile collided with the Raines' automobile, in which Raines was still seated, and plaintiff was struck by one of the two vehicles when he reached a point about two or three feet west of the rear bumper of the Raines car.

Plaintiff did not stop or delay in leaving the automobile. His only appreciable change of pace was when he started running to avoid the danger from the approaching vehicle. In view of the position and location in which the car had been stopped, the route taken by him was a direct one.

The question is whether, under the foregoing facts, plaintiff was engaged in *alighting from* the Raines car at the time of injury, so as to bring him within the coverage afforded by the above quoted provision of Nationwide's policy.

The words *alighting from* are used in a policy provision which refers to other positions in relation to an insured vehicle. Each has a particular meaning. The terms are not synonymous, and each clearly is intended to cover a class of persons and situations not necessarily included in the other terms used. *McAbee v. Nationwide Mutual Insurance Company,* 249 S. C. 96, 152 S. E. (2d) 731.

We considered a similar policy provision in the *McAbee* case with reference to the meaning of the word "upon" as used therein. We concluded there that the words "in or upon" were not free from ambiguity and required a broad and liberal construction in favor of

the insured. The same rule of liberal construction applies in construing the words used in the present policy provision.

Under the present policy provision, a person is an occupant, and therefore insured, if he is *in, upon, entering into,* or *alighting from* the vehicle. The words "in" and "upon" encompass situations where a person has some physical contact with the vehicle at the time of injury. *McAbee v. Nationwide Mutual Insurance Co., supra.* If the phrase "alighting from" is limited to the physical act of descending from the automobile, it would be meaningless because a person would still be in contact with it and within the coverage afforded under the terms "in" or "upon". *Alighting from* must, therefore, extend to a situation where the body has reached a point when there is no contact with the vehicle.

Where the act of alighting is completed is uncertain. It must be determined under the facts of each case, considered in the light of the purpose for which coverage is afforded. Its meaning must be related to the particular use of the automobile and the hazards to be encountered from such use. It is reasonable to conclude that coverage was intended to protect a guest against the hazards from passing automobiles in the vicinity, while the guest, although not *in* or *upon* the vehicle, is still engaged in the completion of those acts reasonably to be expected from one getting out of an automobile under similar conditions.

Plaintiff was struck while within two or three feet of the automobile and while he was proceeding promptly to the shoulder of the highway and the adjacent yard. It was necessary for him to descend from the vehicle on to the paved portion of the highway and then go around it, either to the front or rear, to remove himself from the hazards from passing vehicles. At the time of injury, he was actually attempting to escape the danger from the oncoming vehicle to which he was subjected before clearing the rear of the insured automobile. Under the foregoing

facts, the lower court properly concluded that plaintiff was engaged in *alighting from* the Raines car at the time of his injury, within the meaning of the quoted provision of Nationwide's policy. See: Couch on Insurance (2d), Sections 45-158 and 45-159; Anno: 19 A. L. R. (2d) 513 and Later Case Service.

Plaintiff was therefore an insured under both the policy of Nationwide and that of Grange. Since this was true, we reach the question of whether Nationwide should be considered as affording primary coverage and required to make payment of the entire loss, or whether the companies should be required to contribute pro rata.

Both policies contain identical "other insurance" clauses as a part of the uninsured motorist endorsements and are worded as follows:

*"Other Insurance.* With respect to bodily injury to an insured while occupying an automobile not owned by the Named Insured, the insurance under this endorsement shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar bodily insurance available to him and applicable to the accident, the damages for bodily injury shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

In reaching the conclusion that Nationwide provided primary coverage for plaintiff's loss, the lower court relied upon the decision in *Wrenn & Outlaw, Inc. v. Employers'*

*Liability Assurance Corp.*, 246 S. C. 97, 142 S. E. (2d) 741, as dispositive of the issue. Nationwide contends that the *Wrenn* decision is inapplicable here "since the policy provisions as construed in that case were in the general liability provisions of the policy and the provision in the case at hand is under the uninsured motorist endorsement." The position is taken that an excess insurance clause is illegal in an uninsured motorist endorsement because its effect is to place a limitation upon the coverage required to be afforded by the uninsured motorist statute. This, under Nationwide's contention, would eliminate the excess insurance clause in both policies, leaving the pro rata provision under which both companies would contribute to the payment of plaintiff's loss. The decision in *Vernon v. Harleysville Mutual Casualty Co.*, 244 S. C. 152, 135 S. E. (2d) 841 is cited by Nationwide to sustain its contention.

We do not think that the *Vernon* decision sustains the position of Nationwide. In *Vernon,* one Johnson, while driving Vernon's automobile, had a collision with an uninsured motorist. Vernon sued Johnson and the uninsured motorist for damages to his automobile, resulting in the recovery of judgment only against the uninsured motorist. Harleysville Mutual Casualty Company had in effect a policy issued to Vernon, the owner of the damaged vehicle, which contained an uninsured motorist endorsement by which it agreed "to pay all sums which the Insured * * * shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of: (b) injury to or destruction of (1) an automobile * * * owned by the named insured * * *." The policy also contained a provision that "with respect to property damage, the insurance afforded under this endorsement shall be excess insurance over any other valid and collectible insurance against such property damage."

Johnson, the driver of Vernon's automobile, was insured under a collision policy issued by American Security Insur-

ance, which did not contain an uninsured motorist endorsement but did contain a provision agreeing with its insured "to pay for loss covered by collision to the owned automobile or to a non-owned autombile." American's policy also carried a clause providing that the coverage afforded as to a non-owned automobile shall be excess insurance over any other valid and collectible insurance.

Harleysville took the position in *Vernon* that the coverage afforded by American was other valid and collectible insurance against the property damage sustained to its insured's vehicle and that Harleysville's policy was excess insurance to that provided by American. In rejecting Harleysville's contention, we held that American did not contract to pay the amount that Vernon was legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle and therefore its policy did not constitute "other insurance" against the loss covered by Harleysville. Since this was true, the "other insurance" provisions in the uninsured motorist endorsement of Harleysville's policy were ineffective to limit the coverage required by statute. We do not construe Vernon as holding that "other insurance" clauses are necessarily in conflict with the uninsured motorist statute.

While decisions have been cited from other jurisdictions for the proposition that "other insurance" provisions conflict with their respective uninsured motorist statutes, we do not find such decisions persuasive. The amount of coverage afforded by each policy was in compliance with our uninsured motorist statute and, as previously mentioned, sufficient to pay the judgment obtained by plaintiff. The "other insurance" clause of each policy contained a provision to the effect that the coverage thereby afforded would be excess insurance with respect to a non-owned automobile. To the extent that such provisions simply spell out, as applied to the facts of this case, which of the two insurers afforded primary coverage and

which afforded excess coverage, they do not have the effect of affording less coverage than is required by the uninsured motorist statute. We find nothing in our statute or decisions which would require a holding, under the present facts, that such provisions conflict with the provisions of our statute or that would require giving them any different meaning or application than when used in the general liability provisions of a policy.

The *Wrenn* case, *supra,* relied upon by the lower court involved similar "other insurance" clauses in the general liability provisions of the policy. The decision in *Wrenn* is controlling here.

Under the reasoning in *Wrenn,* we conclude that Nationwide provided primary coverage for plaintiff's loss. As in *Wrenn,* the excess insurance clause in Nationwide's policy did not apply because the automobile occupied by plaintiff was owned by the named insured. The pro rata clause in Nationwide's policy would be applicable only if plaintiff had other similar insurance "available to him and applicable to the accident." Grange's policy did not provide plaintiff with other insurance within the pro rata clause of Nationwide's policy because Grange's policy as to non-owned automobiles was expressly declared to be excess and therefore could not be other insurance "available to plaintiff and applicable to the accident."

The judgment of the lower court is accordingly affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.