420 So.2d 518 (1982)
Paul DAY, Plaintiff-Appellant,
v.
COCA-COLA BOTTLING COMPANY, INC., Southern Farm Bureau Casualty Insurance Company, Western Casualty & Surety Company, Larry V. McManus, and Louis F. Gourgues, Defendants-Appellees.
No. 14982.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1982.
*519 McKinley, O'Neal & Storms by Hodge O'Neal, III, Monroe, for plaintiff-appellant.
Cotton, Bolton, Roberts & Hoychick by John Hoychick, Jr., Rayville, for Louisiana Farm Bureau Mut. Ins. Co.
Before HALL, MARVIN and JASPER E. JONES, JJ.
MARVIN, Judge.
In this action for personal injury arising out of a three-vehicle collision, the plaintiff, who had parked and gotten out of his vehicle when the collision occurred, appeals a judgment rejecting his demands against his uninsured motorist carrier.
The trial court concluded that plaintiff was not injured "while alighting from" his vehicle within the meaning of the policy. We reverse on this point and reach the other issues which arise where the plaintiff reserves his rights against the UM carrier and settles, before trial, his demands against the drivers and owners of the other two vehicles involved, one of whom was self-insured (LRS 32:1042) and the other of whom was un[der]-insured (LRS 22:1406).

THE ACCIDENT
Plaintiff Day and his passenger, Collins, were proceeding easterly on Interstate 20 in a pickup truck owned by their employer on a rainy weekday morning in April 1980. A Chevrolet sedan driven by McManus passed Day at a high rate of speed, went out of control, and skidded into the median ground of the highway. Day observed what had occurred and drove his truck onto the blacktopped southernmost shoulder of the highway a few feet east of the Chevrolet, where he parked the truck and left the motor and windshield wipers going.
Day and Collins got out of the truck and walked on the blacktop toward the rear of the truck. About the time they reached the rear of the truck they saw that an accident was imminent. The Chevrolet was attempting to back from the median into the eastbound lanes of the Interstate in the face of an approaching Coca-Cola tractor trailer. After yelling and motioning in an attempt to stop the Chevrolet's backing maneuver, and when the Coca-Cola truck had applied its brakes and was jack-knifed on the highway, Day, apparently terrified at the rear or rear side of the truck, was unable to escape, while Collins managed to run from the shoulder of the road and leap into a ditch.
The Coca-Cola truck struck and glanced off the backing Chevrolet and then collided with the parked truck, sandwiching Day when Day was about two feet away from the truck. Among other injuries, Day suffered a severe concussion which prevented him from remembering anything about the accident or how it occurred. Collins testified that the collision occurred within 45 seconds or one minute from the time Day stopped the truck. The trial court concluded that the collision occurred only "several seconds from the time that [Day] ... parked on the roadside."

THE UM COVERAGE ISSUE
The policy of Day's employer obligates the insurer to pay all sums which the insured shall be legally entitled to recover as damages from the operator of an uninsured automobile because of bodily injury caused by accident arising out of the use of the uninsured automobile. Day is an insured under this employer's policy while occupying the insured truck. The word occupying is defined by the policy as "mean[ing] in or upon or entering into or alighting from." These terms have been construed several times by courts in various jurisdictions. See Annotation at 19 ALR 2d 513, as supplemented.
Our supreme court has not had occasion to squarely construe the term while alighting from, but has observed
"... it is not necessary for a plaintiff, to come within the coverage of an uninsured motorists clause, to prove, as an essential element of his claim, that he was actually physically touching the car at the time of *520 the injury." Smith v. Girley, 260 La. 223, 255 So.2d 748, 751 (1971).
The word while connotes some continuity of action by the insured person and means "during the time that" or "as long as" that person is alighting from the automobile. The word alighting literally means to get down or descend or to remove a burden from the automobile. Saint Paul-Mercury Indemnity Company v. Broyles, 230 Miss. 45, 92 So.2d 252 (1957).
If the term while alighting from is limited to the physical act of descending to the ground or pavement from the automobile, it would be superfluous and meaningless in the policy because the insured person would be in some contact with the automobile until his or her feet touched the ground and would be covered by the policy terms in or upon the automobile. The term while alighting from, when construed with the whole of the policy language, must extend to some situations where the body of an insured person has reached a point where he is neither in nor upon, in physical contact, with the automobile. Whitmire v. Nationwide Mutual Insurance Company, 254 S.C. 184, 174 S.E.2d 391, 394 (1970).
Breard v. Haynes, 394 So.2d 1282 (La. App. 1st Cir. 1981), affords some guidance. Breard had been a passenger in Cook's car. About 15 minutes after he got out of Cook's car, Breard was standing 70 feet away from the Cook car in the highway median while a policeman investigated a minor accident. An approaching vehicle went out of control and struck Breard. Breard claimed that he should be covered by the UM policy on Cook's car. The policy language appears to be the same as before us. The term occupying there meant "in or upon or entering into or alighting from." The court found "that the lapse of fifteen ... minutes, the removal of some seventy feet, the lack of some `physical relationship' between the Cook vehicle and [Breard] and [Breard's]... placing himself in a position of danger lead to the conclusion that [Breard] was not `occupying' the Cook vehicle at the time of the ... accident." 394 So.2d at p. 1284. The court further concluded that Breard "lost" his status as an insured. We make a similar analysis in the light of the language and purpose of the policy and of the circumstances of the case before us.
As Breard observed, it is not physical contact with the vehicle that serves as a basis to determine whether a person is injured while alighting from a vehicle but it is the relationship between the person and the vehicle, obviously of time and in distance with regard to the risk of alighting, that determines this specific coverage. See Smith, supra. When the time and distance factors are no longer proximate to the risk to which a person exposes himself while alighting from a vehicle, as they were in Breard, certainly the Breard result should be pronounced. That person at some time and at some distance "loses" the UM protection. Breard, supra. Certainly no absolute rule can be stated because this determination must be made upon the circumstances of the particular case.
We must respectfully disagree with the trial court and find that the circumstances here compel a finding of coverage. Day was never more than about 24 inches from the truck and no more than "several seconds" elapsed from the time he parked the truck until he was sandwiched between his truck and the Coca-Cola truck. This relationship of time and distance is not attenuated by either factor and Day had no real opportunity or time, once he parked and exited the truck, to choose between a position of greater safety and the general position which he was in when the collision occurred.
The UM carrier argues that Day voluntarily placed himself in a position of unnecessary danger and that with the slightest care Day could have avoided his position of peril. Defendant's argument (essentially that Day is not legally entitled to recover because of his own contributory negligence) might have merit if it is found that it was unreasonable for Day to have parked and exited the truck under the stated circumstances. Day's purpose in parking and exiting his truck was to render aid to the *521 McManus Chevrolet and its occupants. By granting some limited immunity to persons who render aid to others in an emergency, the legislature has encouraged our citizens to render such aid. See LRS 9:2793.
Until he parked and exited his truck, Day could not have known whether any of the occupants of the McManus Chevrolet were injured or whether the Chevrolet was immobilized. We do not find then that Day acted unreasonably under the circumstances.

DAY'S INJURIES AND SETTLEMENTS
The UM policy here provided $10,000 per person coverage. McManus, whose liability policy provided only $5,000 coverage, was an uninsured motorist. LRS 22:1406 D2(b).
During the 4½ months Day was off work following the accident, his employer's w.c. insurer paid comp benefits of $3,174 and medical benefits of $6,153. Day sued McManus and his liability insurer; Coca-Cola, who was self-insured; and his employer's UM carrier. The w.c. carrier intervened as a subrogee of Day against the alleged tortfeasors.
In a joint settlement before this case was tried and in which Day reserved all rights against the UM carrier, Coca-Cola paid $15,000 and McManus' insurer paid its $5,000 limits. The comp carrier received $5,000 for its subrogated claims and released its claims against Coca-Cola and McManus, and Day, who received $15,000, released his claims against all of these persons whether in tort or under the worker's compensation law.
As a result of the accident, Day was hospitalized 18 days for injuries which included a severe concussion, fractured ribs, toe, and clavicle, multiple contusions to his body and a severe contusion of a lung, and a collapsed lung with both air and blood in the pleural cavity (pneumothorax and hemothorax). A tube was inserted through his side to reinflate the collapsed lung and remained there for about ten days. The fractured clavicle required an upper body cast and later an X-type brace. The clavicle fracture, which did not heal straight, produces some discomfort "occasionally in the mornings ... a little bit sore around [the] chest" but does not cause Day "any trouble" as of the date of the trial, October 13, 1981, according to Day's own testimony. Day also testified that he was not having any other "problems" at the time of the trial. Day's monthly wages averaged almost $1290 for the 15 months preceding the accident. His loss of wages because of personal injury (4 ½ months times $1290) was $5,750.

THE EFFECT OF THE SETTLEMENTS; CONTRIBUTION
While the issues of the negligence of McManus and of Coca-Cola have not been briefed, we must consider these issues insofar as they affect the UM carrier's right against Coca-Cola. See C.C. Arts. 2103, 2324, 2203, before comparative negligence amendments adopted by Act 431 of 1979, effective August 1, 1980. See Wall v. American Emp. Ins. Co., 386 So.2d 79 (La. 1980).
McManus was clearly negligent. If the Coca-Cola driver was also negligent, the UM carrier is entitled to reduce its obligation to Day by one-half because Day's settlement with Coca-Cola deprives the UM carrier of its right to claim contribution from a joint tortfeasor.
Because the amount at issue, at most, is $10,000 we shall presume, but not decide, that the Coca-Cola driver was jointly negligent with McManus. This presumption, however, would not cause the UM carrier's obligation to Day to be less than $10,000 because of the extent of Day's damages. The malformation of the collarbone (clavicle) and the slight and occasional discomfort, while minimal, are permanent residual effects. The initial effects of the accident and surgical treatment of Day's many injuries admittedly caused him pain and disability for at least 4 ½ months. He suffered severe headaches and some loss of memory because of the concussion. He incurred medical expenses and lost wages. Day's damages, including loss of wages, *522 would range from $30,000 to $50,000. McManus' virile share (½) in either case would exceed the UM policy limits. See Whitten v. Empire Fire & Marine Ins. Co., 353 So.2d 1071 (La.App. 2d Cir. 1977). We, therefore, render judgment against the UM carrier for $10,000.

PENALTIES, ATTORNEY FEES
Where the insurer has a reasonable basis to defend the claim, penalties and attorney fees are not assessed. We cannot find the UM carrier's defense to have been asserted capriciously and arbitrarily in this instance because there is some, but not authoritative and well reasoned, authority supporting the defense. See Annotation, 19 ALR 2d 513 cited supra.

DECREE
Accordingly, the judgment appealed is reversed and judgment is hereby rendered in favor of Day and against the UM carrier, Louisiana Farm Bureau Mutual Insurance Company, for $10,000 with legal interest from judicial demand and for all costs, here and below.
REVERSED AND RENDERED.