493 So.2d 600 (1986)
Frank WESTERFIELD and Barbara L. Westerfield
v.
Armand LaFLEUR and State Farm Mutual Insurance Company.
No. 86-C-0065.
Supreme Court of Louisiana.
September 8, 1986.
*601 Patrick J. Mangan, Losavio & Weinstein, Baton Rouge, for plaintiff-applicant.
David A. Hughes, Gist, Methvin, Hughes & Munsterman, Alexandria, for defendant-respondent.
DENNIS, Justice.[*]
A summary judgment rendered below dismissed this wrongful death action by the parents of Angie Westerfield who was struck and killed one morning by an underinsured vehicle as she crossed the highway to board a school bus. The question presented for our decision is whether Angie was "entering into" the bus when the accident occurred so that coverage is afforded under the bus owner-driver's uninsured motorist insurance policy. The trial court found from depositions that, although she was attempting to board the bus, Angie was not "entering into" the bus, because she was neither touching nor within reach of it when she was killed, and rendered summary judgment dismissing the suit against the bus owner-driver's uninsured motorist carrier. The court of appeal affirmed because "there was not a sufficient relationship of time and distance between Angie and the bus." We reverse. The policy language defining an insured as a person who is "in or upon or entering into or alighting from" the insured vehicle, is ambiguous. While insurance contracts *602 are construed in order to effectuate the intent of the parties, ambiguous terms of a contract of insurance are to be construed liberally in favor of a person claiming coverage. Under one reasonable interpretation of the insurance policy, when a school child enters a safety zone specifically provided by positive law for the protection of children entering immobile signalized school buses and proceeds toward the bus intending to board it and travel to school, the child is an insured under uninsured motorist coverage because she is engaged in the process provided by law for entering into the school bus. Accordingly, summary judgment was erroneously granted because mover failed to show that coverage is not afforded under any reasonable construction of the insurance contract.
There is no genuine dispute as to the material facts reflected by the pleadings and depositions filed in support of the summary judgment. On February 9, 1983, at approximately 7:00 a.m., five year old Angie Westerfield was waiting for the school bus in front of her house on State Highway 10, a two lane roadway. Presently, Armand Lafleur, a parish school bus driver arrived in his bus, activated the bus's alternately flashing signals, and stopped on the shoulder across the roadway from Angie in order to pick her up and take her to school. As Angie attempted to cross the roadway to board the bus she was struck and killed at a place on the highway about fifteen feet from the bus by a pickup truck driven by Anthony Giles.
Plaintiffs, Frank Westerfield and Barbara Westerfield, parents of Angie, filed suit against Armand LaFleur and State Farm Insurance Company, LaFleur's liability insurer, alleging that the accident occurred as a result of the negligence of Anthony L. Giles and Armand LaFleur. They also contend that Giles was an underinsured motorist and that the insurance policy issued to LaFleur by State Farm provided uninsured motorist coverage for Angie, in addition to liability coverage for LaFleur.
State Farm filed a Motion for Summary Judgment on the question of coverage of Angie under the uninsured motorist provision of its policy. The trial court, after reviewing the pleadings and depositions, found that Angie was not covered as an insured because she was not "entering into" the school bus at the time she was struck and killed, as was required for coverage under the uninsured motorist provision of State Farm's policy. Finding no material issue of law or fact, the trial court granted State Farm's Motion for Summary Judgment and dismissed plaintiffs' demands against State Farm claiming that Angie was an insured under the uninsured motorist provisions of its policy issued to LaFleur.
Plaintiffs appealed and the court of appeal affirmed. Westerfield v. Lafleur, 480 So.2d 973 (La.App. 3d Cir.1985). We granted writs. 481 So.2d 1341.
According to the court of appeal opinion, the relevant portions of the uninsured-underinsured provision of State Farm's insurance policy issued to LaFleur are as follows:
"I. Damages for Bodily Injury Caused by Uninsured Automobiles. The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile ...
* * * * * *
II. Definitions.
(a) `insured' means:
(1) the named insured as stated in the policy (herein also referred to as the `principal named insured') and, while residents of the same household, the spouse of any such named insured and relative of either:
(2) any other person while occupying an insured automobile ...

*603 (e) Occupying. The word `occupying' means in or upon or entering into or alighting from ...".
Consequently, in order for a person to be covered as an insured, solely because he is "occupying" the insured automobile, he must be "in or upon or entering into or alighting from" the insured automobile. This clause is ambiguous and therefore susceptible to more than one reasonable interpretation. Hendricks v. American Employers Insurance Company, 176 So.2d 827 (La.App. 2d Cir.1965); Whitmire v. Nationwide Mutual Insurance Company, 254 S.C. 184, 174 S.E.2d 391 (1970); Nelson v. Iowa Mutual Insurance Company, 163 Mont. 82, 515 P.2d 362 (1973) and Wolf v. American Casualty Company, 2 Ill.App.2d 124, 118 N.E.2d 777 (1954). See also, Smith v. Girley, 260 La. 223, 255 So.2d 748 (1971).
The strictest reasonable interpretation of this clause would require part of the person's anatomy to touch or penetrate the vehicle before there could be coverage. Greer v. Kenilworth Insurance Company, 60 Ill.App.3d 22, 17 Ill.Dec. 347, 376 N.E.2d 346 (1978) and Southern Farm Bureau Casualty Company v. Fields, 262 Ark. 144, 553 S.W.2d 278 (1977) (where the policy language required physical contact for a person to be "occupying" a vehicle).
However, in construing this phrase, the courts have recognized that there are other reasonable interpretations more favorable to the person seeking coverage.
The Louisiana cases that have construed this policy language have held that it is not necessary for a plaintiff, to come within coverage of an uninsured motorist clause, to prove, as an essential element of his claim, that he was actually physically touching the car at the time of the injury. Smith v. Girley, supra; Day v. Coca-Cola Bottling Company, Inc. 420 So.2d 518 (La. App. 2nd Cir.1982) and Breard v. Haynes, 394 So.2d 1282 (La.App. 1st Cir.1981). In Smith, a deputy sheriff who was in the process of attaching jumper cables to a stalled vehicle was held to be "upon" the car for purposes of uninsured motorist coverage. In Day the court of appeal held that a truck driver who was injured when he had gotten out of his truck to inspect it for damage, was "alighting from" the truck and thus entitled to collect under his employer's uninsured motorist policy. We quoted with approval the language of the second circuit court of appeals:
It is not physical contact with the vehicle that serves as a basis to determine whether a person is injured while alighting from a vehicle but it is the relationship between the person and the vehicle, obviously of time and in distance with regard to the risk of alighting that determines specific coverage. 420 So.2d at 520 (emphasis supplied).
Courts from other jurisdictions, while not relying on the physical relationship test discussed above, liberally construe the language at issue here. Particularly, the phrase "alighting from" has frequently been interpreted in favor of the insured. For example, in Kantola v. State Farm Insurance Company, 62 Ohio Misc. 11, 405 N.E.2d 744 (1979), the court found that a child was "alighting from" the school bus when struck and killed. The child had exited the school bus, but had not yet safely reached the other side of the road. As the child walked in front of the bus and began crossing the street, he was hit by an oncoming automobile. The court recognized that when a child is discharged from a school bus, the process of "alighting from" continues until the child reaches a position of safety.
The Montana Supreme Court liberally interpreted the phrase "alighting from" in Nelson v. Iowa Mutual Insurance Company, 163 Mont. 82, 515 P.2d 362 (1973). In that case, the decedent's car ran off the road in a blizzard. Decedent got out of the car and attempted to make her way to safety. She could not overcome the elements, and died of frostbite and exposure before she could find help. The decedent was found some 143 feet away from her car. The court held that the decedent was in the process of alighting from the vehicle *604 at the time of her death, and that there was coverage under the policy.
In Whitmire, supra, the plaintiff was severely injured when getting out of a friend's car. The driver parked the car on the side of the road, facing the oncoming traffic. The plaintiff, a passenger in the car, got out of the car on the passenger side and was walking toward the rear of the car when he saw an oncoming car heading straight toward him. Plaintiff tried unsuccessfully to get out of the path of the oncoming car. He was three or four feet away from the insured vehicle at the time of the accident. The court held that there was coverage under the driver's uninsured motorist policy because the plaintiff was "alighting from" the car at the time of the accident. The court emphasized that the plaintiff did not stop or delay in leaving the automobile and that the route taken by him was a direct one.[1]
In addition, the courts have liberally construed the word "upon" for purposes of providing uninsured motorist coverage. See, Smith, supra, Hart v. Traders and General Insurance Company, 487 S.W.2d 415 (Tex.Civ.App.1972); Robson v. Lightning Rod Mutual Insurance Company, 59 Ohio Misc. 61, 393 N.E.2d 1056 (1978); and, generally, A. Widiss, Unisured and Underinsured Motorist Coverage § 5.2 (1981).
Still other courts have found claimants "occupying" a car by virtue of the fact that they were engaged in activities related to the use of the insured vehicle. For example, in Cocking v. State Farm Mutual Automobile Insurance Company, 6 Cal. App.3d 965, 86 Cal.Rptr. 193 (1970) the driver of a vehicle stopped on the side of the road to put snow chains on the tires. He had been out of the car for about two minutes and was standing one to four feet away from the rear of the car when he was struck by an uninsured motorist. The policy was identical to the one here in all pertinent aspects. In that case, the California statute defined "uninsured motor vehicle" as a motor vehicle used by the named insured. Our statute contains a similar provision, requiring that "no automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle" shall be issued or delivered without providing, or specifically rejecting, uninsured motorist coverage.[2] In neither case did the policy or statute specifically provide that anyone "using" the car was an insured for purposes of uninsured motorist coverage. Nevertheless, the court held that:
"Coverage is extended to the person seeking recovery under the policy where he was using the vehicle, either as the named insured or with the latter's permission or consent, express or implied, and where he was in such a position in relation thereto as to be injured in its use. See Madden v. Farm Bureau Mut. Automobile Ins. Co., 82 Ohio App. 111, 79 N.E.2d 586, 588; Whisnant v. Aetna Casualty & Surety Ins. Co., 264 N.C. 303, 141 S.E.2d 502, 504-505; Wolf v. American Cas. Co. of Reading, Pa., 2 Ill.App.2d 124, 118 N.E.2d 777, 780; Katz v. Ocean Acc. & Guarantee Corp., 202 Misc. 745, 112 N.Y.S. 737, 741." 86 Cal. Rptr. at 196-97.
While the court ultimately found that the claimant was "upon" the car, it was the fact that the plaintiff was performing an act that was "physically and directly related to the car" that was critical to the finding of "occupancy" in that case. 86 Cal.Rptr. at 197. Other cases have taken a similar approach. See, for example, Rau v. Liberty Mutual Insurance Company, 21 *605 Wash.App. 326, 585 P.2d 157 (1978)[3]; Hartford Accident & Indemnity Company v. Booker, 140 Ga.App. 3, 230 S.E.2d 70 (1976) and Federated Mutual Implement and Hardward Insurance Company v. Gupton, 357 F.2d 155 (4th Cir.1966), and Widiss, supra at § 5.2(3).
When words and phrases contained in an insurance contract are ambiguous, they are to be construed reasonably in the sense that is most favorable to the insured or the person claiming coverage. Smith, supra; Hendricks, supra; Credeur v. Luke, 368 So.2d 1030 (La.1979) and Rodriguez v. Northwestern National Insurance Company, 358 So.2d 1237 (La.1978). Because of this, summary judgment may not be rendered declaring lack of coverage unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. La.C.C.P. art. 966. After considering the record designated for our review, the reasons of the previous courts, and the arguments of counsel, we conclude that summary judgment was erroneously rendered, because there is a reasonable interpretation of the policy under which coverage is afforded under the material facts shown.
A school bus must be equipped with signal lamps mounted as high and as widely spaced as practicable, capable of displaying alternately flashing lights, in front and back, visible at 500 feet in normal sunlight. La.R.S. 32:318(B). A school bus driver must activate the alternately flashing signal lights whenever he stops or is about to stop on the highway for the purpose of receiving or discharging school children. La.R.S. 32:80(A), (B).
The driver of a vehicle on a highway approaching a school bus that has stopped to receive or discharge school children must stop his vehicle not less than thirty feet from the school bus when its signal lights are flashing and not proceed until its signals are off or the bus resumes its trip. La.R.S. 32:80(A)(1). Any person convicted of violating this law shall be fined five hundred dollars. La.R.S. 32:80(A)(4). A school bus driver is authorized to notify law officials of a violation of this law, and a citation may be issued on the basis of such notice to the owner or lessee of a vehicle involved in a violation. La.R.S. 32:80(A)(3). This law does not apply when a motorist is proceeding on a roadway separate from that upon which the bus is stopped or when the bus stops in a loading zone adjacent to a controlled access highway which pedestrians may not cross. La. R.S. 32:80.
Hence, a child who crosses a typical two lane roadway while entering into an immobile signalized school bus is guarded from harm by a legal cordon during the entire time she is traversing the roadway. She and her parents are entitled to rely for her safe passage upon the motorist's observance of the safety zone and the bus driver's performance of his duty to activate highly visible signals, await the child's safe boarding and report any motorist's violation of the legally protected entryway. The injury or death of a child during the protected boarding procedure caused by a transgressing motorist can result in severe consequences for the malefactor including criminal penalties, civil damages, and moral opprobrium.
The process by which a child crosses an open highway to board a school bus is charged with danger. Accordingly, the legislature has enacted the most stringent provisions feasible to safeguard the entire operation. The child, the bus and the bus driver are constituents of this process, bound together legally and practically in a *606 special, exigent relationship, from the moment the bus stops and signals until the child is safely aboard. Because parties entering contracts of insurance on school buses should be and probably are aware of all these matters, it reasonably may be inferred that they intend "entering into" a school bus to include the entire typical process by which a child traverses a roadway to a safe place within the bus.
Under this reasonable interpretation of the contract, Angie was an insured when she was killed because she was in the process of traversing the roadway under the protection of law in response to an immobile signalized school bus with the intention of boarding it for transportation to school. Consequently, the summary judgment dismissing the suit based on her wrongful death and status as an insured under the policy's uninsured motorist coverage was erroneously rendered.
REVERSED AND REMANDED TO TRIAL COURT FOR FURTHER PROCEEDINGS.
NOTES
[*] Blanche, J., retired, participated in this case ad hoc, in place of Cole, J., the matter having been heard and submitted before Justice Cole replaced Justice Blanche on the Court.
[1] See also, Robson v. Lightning Rod Mutual Insurance Co., 59 Ohio Misc. 61, 393 N.E.2d 1056 (1978) (plaintiff who was unloading stereo from back of pickup truck was either entering or upon the truck); Goodwin v. Lumbermen's Mutual Casualty Co., 199 Md. 121, 85 A.2d 759 (1952) (women who were standing by parked car waiting for their friend to reach inside and unlock the doors were entering into the car) and Stoddard v. AID Ins. Co., 97 Idaho 508, 547 P.2d 1113 (1976) (paraplegic who had gotten out of his van and who was making his way to a larger wheelchair when a fire started, was alighting from his van).
[2] La.R.S. 22:1406(D)(1)(A).
[3] In that case, the policy was similar in all material respects to our own. The liability portion of the policy provided coverage for any person "using" the insured vehicle with the permission of the named insured. The uninsured motorist provision only purported to cover persons "occupying" the insured vehicle. The court held that to the extent that the insurer was attempting to limit coverage, such an attempt was invalid. Thus, in that case, a truck driver who had gotten out of the truck to ask directions was "using" the truck for purposes of uninsured motorist coverage.