ROBERT OLSEN, PERSONAL REPRESENTATIVE OF THE ESTATE OF MATTHEW ROBERT OLSEN, DECEASED, AND ROBERT OLSEN AND JUDY OLSEN, APPELLEES, V. FARM BUREAU INSURANCE COMPANY OF NEBRASKA, APPELLANT.

609 N.W. 2d 664

Filed April 27, 2000.   No. S-99-151.

Maren Lynn Chaloupka, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellant.

Steven W. Olsen, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Matthew Robert Olsen (Matthew) was injured as a result of a one-vehicle accident on the morning of April 17, 1995. The driver of the vehicle in which Matthew was riding lost control of the vehicle, which went off the road and struck a power pole before coming to rest in a ditch. After exiting the vehicle, Matthew was electrocuted by a powerline; he died several days later from the resulting injury. The primary question presented in this appeal is whether Matthew was "occupying" the vehicle at the time of his electrocution within the meaning of his parents' vehicle insurance policy.

## FACTUAL BACKGROUND

Matthew was 16 years old at the time of the accident. The driver of the vehicle, Cody Young, was 15 years old at the time

of the accident. The vehicle Cody was driving was owned by Robert Olsen and Judy Olsen, Matthew's parents. The defendant in the instant case, Farm Bureau Insurance Company of Nebraska (Farm Bureau), admits that at the time of the accident, the Olsens were insured by a vehicle insurance policy issued by Farm Bureau and that the vehicle involved in the accident was covered by that policy.

At the time of the accident, Cody was driving the Olsens' vehicle with Matthew's permission, although Cody did not have a driver's permit. The boys were driving into Bridgeport, Nebraska, from Cody's home outside of town. They were driving west on a county road that had a rough surface and was dry at the time.

Cody testified in a deposition that he was driving under the speed limit when he lost control of the vehicle due to the poor condition of the road. The Morrill County Sheriff determined that Cody lost control on gravel that had been used to patch the pavement. Cody stated, "I remember us being kind of airborne. I remember when I moved the steering wheel, the car didn't move." Matthew grabbed the steering wheel to try and help Cody regain control of the vehicle, but the vehicle went into the ditch.

When asked whether the vehicle struck the power pole, Cody testified, "I can't recall. It was going pretty fast. I think so." The Morrill County Sheriff determined that the vehicle struck and sheared the power pole before landing in the irrigation ditch. Photographs taken at the scene indicate that the power pole was bent to a nearly horizontal position, but was not broken off completely, nor was the top of the pole in contact with the ground.

The vehicle came to rest in an irrigation ditch on the south side of the east-west road, with the front of the vehicle pointed southwest. After the vehicle came to a stop, both Cody and Matthew exited the vehicle. Since the driver's-side door would not open, both exited out of the passenger's-side door. Both Cody and Matthew were able to get out of the vehicle without assistance. Cody testified that Matthew had some cuts on his face, but did not appear to have any broken bones, nor was he limping, staggering, or stumbling. Cody testified that both he and Matthew were "just a little hazy, I'd say, but I mean we

weren't like falling everywhere, but we were not totally coherent, I guess." Cody testified that Matthew spoke and that his comments were to the effect that his parents were going to be upset with him.

Cody testified that after they exited the vehicle, Matthew began to walk away from the door and toward the rear of the vehicle. Cody exited the vehicle right behind Matthew, and Cody went toward the front of the vehicle. About 10 seconds after that, before Cody reached the front of the vehicle, Matthew came into contact with a live powerline.

The Morrill County Sheriff indicated that the powerline was approximately 40 feet from the vehicle. Cody disagreed with this estimation, and in Cody's deposition, he testified that "[i]f you measured from the front of the car all the way to the road, it still wouldn't be 40 feet." Cody further testified that although he had not made measurements, "I've been out there and there ain't no way it could be. Maybe it was a typo. I think 4 [feet] sounds in the right area and I thought maybe that was a typo." Cody testified that Matthew was very close to the vehicle when he was electrocuted, in that Matthew would have been able to reach out and touch the vehicle. Photographs taken at the scene are somewhat inconclusive, but appear to more closely correspond to Cody's estimation regarding the distance of the powerline from the vehicle.

Cody testified that less than a minute passed from the time that he and Matthew exited the vehicle until the moment that Matthew made contact with the powerline. Cody walked toward the front of the vehicle, and when he turned and looked back, he saw Matthew "in the air and there was like [a] big fire ball underneath him." Photographic evidence taken at the scene indicates that Matthew was found approximately 35 to 40 feet away from the vehicle. However, Cody testified that when Matthew was electrocuted, he first landed only a few feet from the rear of the vehicle. Cody testified that Matthew was thrown forward, away from the vehicle, by the electrocution.

Cody ran over to Matthew and turned him over, and then ran for help. When no one was home at the nearest house, Cody returned and attempted to perform CPR on Matthew. Cody then ran to another house, where the resident called for an ambu-

lance. Farm Bureau admits that the Olsens incurred medical expenses in excess of $25,000 as a result of the accident, that the Olsens demanded payment pursuant to the medical payments provision of their insurance policy, and that Farm Bureau denied payment.

## PROCEDURAL BACKGROUND

Robert Olsen, as personal representative of Matthew's estate, and the Olsens, individually, initiated the present action to obtain payment from Farm Bureau under the policy. Both parties filed motions for summary judgment.

Farm Bureau argued, in support of its motion for summary judgment, that Matthew was not "occupying" the vehicle within the meaning of the insurance policy at the time of his injury. Farm Bureau further argued that the action was untimely filed, asserting that the action was time barred by the 2-year statute of limitations found in the wrongful death statutes.

The district court determined that at the time of his injury, Matthew was " 'getting out' " of the vehicle, within the definition of "occupying" contained in the insurance policy. The district court further determined that the action sounded in contract and that compliance with the wrongful death statute was not required. Consequently, the district court granted summary judgment for Matthew's estate and the Olsens and entered judgment against Farm Bureau in the amount of $25,000. Farm Bureau appeals.

## ASSIGNMENTS OF ERROR

Farm Bureau assigns, in summary, that the district court erred in finding that (1) Matthew was an "occupant" of the vehicle at the moment of his injury and thus was eligible for coverage under the Farm Bureau policy and (2) this action is not time barred by the Nebraska wrongful death statutes.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as

a matter of law. *Pfeifer v. E.I. Du Pont de Nemours & Co.*, 258 Neb. 756, 606 N.W.2d 773 (2000); *Fossett v. Board of Regents*, 258 Neb. 703, 605 N.W.2d 465 (2000); *Derr v. Columbus Convention Ctr.*, 258 Neb. 537, 604 N.W.2d 414 (2000).

In reviewing an order of summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Fossett v. Board of Regents, supra; Derr v. Columbus Convention Ctr., supra.*

The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independent of the determination made by the lower court. *Spulak v. Tower Ins. Co.*, 257 Neb. 928, 601 N.W.2d 720 (1999); *Allied Mut. Ins. Co. v. Action Elec. Co.*, 256 Neb. 691, 593 N.W.2d 275 (1999).

Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Phelps Cty. Bd. of Equal. v. Graf*, 258 Neb. 810, 606 N.W.2d 736 (2000); *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000). Which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court. *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999); *Kratochvil v. Motor Club Ins. Assn.*, 255 Neb. 977, 588 N.W.2d 565 (1999).

## ANALYSIS

### WAS MATTHEW "OCCUPYING" VEHICLE WHEN INJURED?

The insurance policy in this case provides, in relevant part: "*We* will pay for **medical expenses** furnished within three years of the date of an **automobile accident** because of **bodily injury** sustained by . . . *You* or any **resident relative** . . . while **occupying** the **covered automobile** . . . ." (Emphasis in original.)

The policy defines "occupying" as "in, upon, getting in, on, out or off." The key question in this appeal is whether Matthew was "occupying" the vehicle within this definition at the time of his electrocution.

In *Whitmire v. Nationwide Mutual Ins. Co.*, 254 S.C. 184, 174 S.E.2d 391 (1970), the claimant was exiting the vehicle in which he had been riding when he saw that he was in danger of being struck by an approaching vehicle. The claimant attempted to flee, but was struck by an uninsured motorist's vehicle. *Id.* The insurance policy for the vehicle the claimant had exited provided coverage for passengers "in, upon, entering into, or alighting from" the vehicle. (Emphasis omitted.) *Id.* at 191, 174 S.E.2d at 394.

The Supreme Court of South Carolina determined that the claimant was alighting from the vehicle when he was injured. *Id.* The court noted that the terms "in" and "upon" encompassed situations in which the person had physical contact with the vehicle at the time of injury. *Id.* The court reasoned:

> If the phrase "alighting from" is limited to the physical act of descending from the automobile, it would be meaningless because a person would still be in contact with it and within the coverage afforded under the terms "in" or "upon[.]" *Alighting from* must, therefore, extend to a situation where the body has reached a point when there is no contact with the vehicle.
>
> Where the act of alighting is completed is uncertain. It must be determined under the facts of each case, considered in the light of the purpose for which coverage is afforded. Its meaning must be related to the particular use of the automobile and the hazards to be encountered from such use. It is reasonable to conclude that coverage was intended to protect a guest against the hazards from passing automobiles in the vicinity, while the guest, although not *in* or *upon* the vehicle, is still engaged in the completion of those acts reasonably to be expected from one getting out of an automobile under similar conditions.

(Emphasis in original.) *Id.*

Similarly, in the instant case, to require that one "getting out" of a vehicle be in physical contact with the vehicle would be to render meaningless the additional policy terms of "in" and "upon." We are persuaded by the logic of *Whitmire v. Nationwide Mutual Ins. Co., supra,* and similarly conclude that the act of "getting out" of a vehicle must extend to a point

beyond an insured's physical contact with the vehicle, and the meaning of "getting out" must be related to the particular use of the vehicle and the hazards to be encountered from such use.

In *Day v. Coca-Cola Bottling Co., Inc.*, 420 So. 2d 518, 519 (La. App. 1982), the Louisiana Court of Appeals was called upon to decide whether a claimant was " 'alighting from' " his vehicle at the time of his injury. In that case, the claimant witnessed a one-vehicle accident in which a vehicle had lost control and had skidded into the median of Interstate 20, a divided highway. *Id.* The claimant, who was driving a pickup truck owned by his employer, parked the truck on the side of the road and exited the truck. *Id.* As the claimant reached the rear of the truck, he saw that another accident was about to occur, as the same vehicle's driver was attempting to back up from the median and onto the Interstate, into the path of an oncoming tractor-trailer. *Id.* The tractor-trailer struck the vehicle and then collided with the claimant's parked truck, pinning the claimant against the truck. *Id.*

Citing *Whitmire v. Nationwide Mutual Ins. Co.*, 254 S.C. 184, 174 S.E.2d 391 (1970), the Louisiana Court of Appeals determined that the act of "alighting from" a vehicle extended beyond the claimant's physical contact with the vehicle. *Day v. Coca-Cola Bottling Co, supra.* The court stated that

> it is not physical contact with the vehicle that serves as a basis to determine whether a person is injured while alighting from a vehicle but it is the relationship between the person and the vehicle, obviously of time and in distance with regard to the risk of alighting, that determines this specific coverage.

*Id.* at 520. The court concluded that an insured is no longer "alighting from" a vehicle "[w]hen the time and distance factors are no longer proximate to the risk to which a person exposes himself while alighting from a vehicle . . . ." *Id.* Under the facts presented in *Day*, the court determined that the claimant was still alighting from his vehicle at the time of his injury. See, also, *Westerfield v. LaFleur*, 493 So. 2d 600 (La. 1986); *Progressive American Ins. Co. v. Tanchuk*, 616 So. 2d 489 (Fla. App. 1993); *Crear v. National Fire & Marine Ins. Co.*, 469 So. 2d 329 (La. App. 1985).

Other courts have reached similar conclusions. In *Nelson v. Iowa Mutual Ins. Co.*, 163 Mont. 82, 515 P.2d 362 (1973), the decedent's vehicle slipped off the road during a blizzard and became stuck in a ditch. The decedent abandoned her vehicle, but was found frozen to death about 143 feet away from the vehicle. *Id.* The Supreme Court of Montana concluded that the decedent was "alighting from" her vehicle within the meaning of her insurance policy when she froze to death, stating that "[u]nder the facts stipulated, the [decedent's] activities after the accident were solely directed to extricating herself from the car to a place of safety." *Id.* at 86, 515 P.2d at 364. See, also, *State Farm &c. Ins. Co. v. Holmes*, 175 Ga. App. 655, 656, 333 S.E.2d 917, 918 (1985) (decedent was " 'alighting from' " vehicle because he had not reached neutral zone when, few feet away from vehicle, decedent was swept away by floodwaters); *Morris v. Continental Ins. Cos.*, 71 Ohio App. 3d 581, 585-86, 594 N.E.2d 1106, 1109 (1991) (claimant's ward not " 'occupying' " vehicle within meaning of insurance policy because he reached "place of safety" prior to returning to vicinity of vehicle).

■ We find this authority to be helpful and persuasive. We hold, therefore, that the act of "getting out" of a vehicle must encompass the zone of danger or risk to which an insured is exposed by the act of exiting a vehicle under the circumstances.

*State Farm Mut. Auto Ins. Co. v. Barton*, 509 N.E.2d 244 (Ind. App. 1987), applied such standards to factual circumstances remarkably similar to those of the instant case. In *Barton*, four teenage boys were riding in a vehicle when the driver lost control on a gravel road. The vehicle hit a utility pole, which broke off and fell on the vehicle. *Id.* No one was injured in the crash, but the vehicle was stuck against the pole in the ditch by the side of the road. *Id.* The boys exited through the driver's-side doors in order to avoid an electrical wire near the passenger's side, and the boys safely made it to the roadway. *Id.* The driver then returned to the vehicle to try and extricate it from the ditch, and the claimant went to the front of the vehicle to push the vehicle and try and help the driver move it. *Id.* The vehicle did not move, and the driver and the claimant began to return to the roadway, but when the claimant was about 3 feet from the vehi-

cle, he stepped on a downed electrical wire in the grass and was severely burned. *Id.*

The insurance policy in that case provided coverage for those "occupying" the vehicle, and defined "occupying" as " 'in(, on,) [or upon or] entering [into] or alighting from.' " *Id.* at 247. The court determined that the claimant was not alighting from the vehicle at the time of his injury, because the claimant and the other occupants of the vehicle had "exited the automobile immediately after it hit the utility pole and walked to the safety of the roadway. At this point, [the claimant] and his fellow occupants had accomplished their exit from the vehicle and the process of 'alighting from' was complete." *Id.* at 248. Consequently, the claimant was no longer alighting from the vehicle when he returned to it to attempt to push it from the ditch. *Id.*

In *Barton*, the claimant was denied coverage because he left the zone of danger associated with exiting the vehicle, therefore completing the act of alighting from the vehicle, and he was injured only upon his return. However, in the instant case, the undisputed testimony of Cody, the only witness to the accident, establishes as a matter of law that regardless of whether the distance traveled was 4 feet or 40 feet, Matthew did not pass beyond the zone of risk prior to sustaining his injury. Cody's deposition testimony established that Matthew exited the vehicle and proceeded directly toward the rear of the vehicle and the safety of the road and that Matthew was injured while doing so. Furthermore, we note that the injury was a direct result of the vehicle accident, as the powerline on which Matthew was electrocuted represented a danger only because the pole to which it was attached had been struck by the vehicle.

Considering the factors of time and distance present in the instant case, we conclude, as a matter of law, that Matthew's injury occurred within the zone of risk to which he was exposed by exiting the vehicle under the circumstances. Therefore, Matthew was still "getting out" of the vehicle when his injury occurred, and he was "occupying" the vehicle at that time within the meaning of the Olsens' insurance policy. Farm Bureau's first assignment of error is without merit.

STATUTE OF LIMITATIONS

Farm Bureau also argues that this action is time barred by the 2-year statute of limitations provided for wrongful death actions by Neb. Rev. Stat. §§ 30-809 and 30-810 (Reissue 1995). Section 30-809 provides:

> Whenever the death of a person shall be caused by the wrongful act, neglect or default, of any person, company or corporation, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

Section 30-810 in turn provides, in relevant part, that "[e]very such action, as described in section 30-809, shall be commenced within two years after the death of such person."

The "purpose of the wrongful death statute, commonly known as Lord Campbell's Act, 'was to prescribe limitations and a remedy for a cause of action which did not exist at common law, for at common law the cause of action died with the death of the claimant.'" *Muller v. Thaut*, 230 Neb. 244, 248, 430 N.W.2d 884, 888 (1988), quoting *Gengo v. Mardis*, 103 Neb. 164, 170 N.W. 841 (1919). It is evident from the plain language of § 30-809 that it is intended to authorize an action to recover damages from a tort-feasor for negligence or some other action resulting in the death of another person. See *Luckey v. Union P. R. Co.*, 117 Neb. 85, 219 N.W. 802 (1928).

It is equally evident that the action in the instant case is not an action brought under § 30-809. The Olsens allege simply that they incurred medical expenses associated with the injury to Matthew and that Farm Bureau is required to compensate them for those expenses pursuant to their insurance policy. There is no allegation that Farm Bureau itself was somehow a tort-feasor responsible for causing Matthew's injury or the Olsens' damages.

For support, Farm Bureau cites *Weatherly v. Blue Cross Blue Shield*, 2 Neb. App. 669, 513 N.W.2d 347 (1994). In that case,

the Court of Appeals stated that "there can be no recovery for death except under the wrongful death statutes." *Id.* at 674, 513 N.W.2d at 351, citing *Rhein v. Caterpillar Tractor Co.*, 210 Neb. 321, 314 N.W.2d 19 (1982), and *Gengo v. Mardis, supra.* However, those cases involved actions brought for wrongful death against the purported tort-feasor who was alleged to have caused the death. In *Weatherly,* for instance, the plaintiff alleged that the defendant insurance company, in refusing to pay for a particular medical treatment, had caused the death of the insured. These cases are inapposite to the instant case.

Because the Olsens did not seek to recover damages resulting from Matthew's death from the party who allegedly caused the death, their action was not an action as described in § 30-809, and was not subject to the statute of limitations contained in § 30-810. Instead, their petition alleged a breach of contract and was subject to the 5-year statute of limitations set forth by Neb. Rev. Stat. § 25-205 (Reissue 1995).

## CONCLUSION

The district court correctly determined that Matthew was, as a matter of law, "getting out" of the Olsens' vehicle when his injury occurred and that the action filed by the Olsens was not a wrongful death action and therefore not subject to a 2-year statute of limitations. The district court's judgment to that effect is affirmed.

The only remaining issue that needs to be addressed is the Olsens' request for attorney fees. Olsens' counsel is permitted 10 days' leave to file an affidavit pursuant to Neb. Ct. R. of Prac. 9F (rev. 1999). See, Neb. Rev. Stat. § 44-359 (Reissue 1998); *Willers v. Willers,* 255 Neb. 769, 587 N.W.2d 390 (1998).

AFFIRMED.