PAUL GENGO, ADMINISTRATOR, APPELLANT, v. JOHN C. MARDIS ET AL., APPELLEES.

FILED FEBRUARY 1, 1919. No. 20128.

1. **Death, Action for:** LIMITATIONS. Section 1429, Rev. St. 1913, creates a right of action which did not exist at common law. It

is a condition precedent to the right of recovery granted in this section that the action be brought within two years after the cause of action accrues.

2. ——: ——. The limitation imposed in this section 1429 is independent of the statute of limitations as found in section 7577, Rev. St. 1913.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Gurley & Fitch,* for appellant.

*Brogan & Ellick, contra.*

ALDRICH, J.

On the 15th day of November, 1911, one John Butera came to his death at Omaha, while employed as a workman on what is known as the Flatiron Building. Afterwards one Paul Gengo became administrator *de bonus non* of the estate of the said John Butera, deceased, and as such administrator, on December 5, 1913, filed an amended petition against the said John C. Mardis, doing business as the J. C. Mardis Company, charging them with the wrongful death of the decedent. This action was commenced under and by virtue of the provisions of section 1429, art. VIII, ch. 17, Rev. St. 1913: "Actions by or against executors." A demurrer was filed to this petition, and after submission and argument was sustained, the decision being that the petition did not state a cause of action, as more than two years had elapsed from the accruing of said cause to the beginning of the action. The purpose of said section 1429, commonly known as Lord Campbell's Act, was to prescribe limitations and a remedy for a cause of action which did not exist at common law, for at common law the cause of action died with the death of the claimant. This statute was enacted to provide a remedy and to entitle representatives of the deceased person to begin a cause of action because of wrongful death of the deceased, and that it should be commenced by an administrator, duly

qualifying, and acting; so that said injured relative might obtain a pecuniary benefit resulting from said wrongful injury, or death.

It is also provided in said act that every such action shall be commenced within two years after the death of said person. This provision is contrary to the general statutory provision with respect to limitations, for that section of said general statute provides that when the party wanted places himself without the jurisdiction of the court, absconds, or stays in hiding so that service cannot be had upon him, then in that case the statute shall cease to operate; while in the case at bar the section of the statute under which this action is brought has its provisions checked and hemmed in as hereinbefore stated, and every action brought under it must be commenced within two years. Then the proposition is: As this action was not commenced for more than two years, does the petition state a cause of action? We are met with the proposition that we should construe the statute of limitations as provided for in section 1429, together with section 7577, Rev. St. 1913, and the toll for the time which defendant stayed away from the jurisdiction of the court should be allowed, and, if this was done, then the petition states a cause of action. We are deciding the proposition and construing section 1429 for the purpose of ascertaining whether the limitations provided in said section should be construed so as to give it effect, or whether it should be construed so as to modify and limit its provisions so as to bring it under the general statutes of limitations in section 7577. While it is true that section 7577 provides that the statute of limitations will not run during the time the defendant is absent from the state, absconds, or keeps himself from the jurisdiction of the court, it is also true that in square contradiction to this and against it is the section of the statute of limitations provided in section 1429. The question is: Which shall prevail? This is an important question,

because it contains a proposition that is decisive of this case.

It is our opinion that as section 1429 is a mere paragraph that comprises an entire act beginning with 1420, and was made with reference to this principal act and independent of any other, it was made to control and provide absolutely a time within which an action shall be commenced. If it were not so, then it would have been very easy for the legislature to have the same saving clause that is found under section 7577; but inasmuch as it does not contain any exception, or any such provision, and no saving clause whatever, it is evident that it means just what it says; and, if it does, then the demurrer in this case was rightly sustained, and the action properly dismissed. If there was any saving clause provided for in this section 1429, why was it not placed there? If it intended to provide a condition which modifies and stops the statute of limitations, then why did it not say so? The answer is: It was never intended to be any other way than the way that we find it. This statute is not alone peculiar to Nebraska in this provision, but is a provision that has been enacted in many other states of the Union. Lord Campbell's Act is in force to-day, and has been for many years in the states of New York, Arkansas and Kansas, and we have interpretations given by the supreme courts of each of these states with reference to the particular matter in hand. See *Kavanagh v. Folsom,* 181 Fed. 401. Also it may be stated that both by principle and analogy the legislature meant to put in this statute the limitation which it did, and which has been interpreted as above stated by the courts. Whenever the legislature makes a law to meet a situation not met by the common law, the legislature has the inherent right to provide whatever it may deem proper and essential to meet a particular situation not heretofore met. For instance, the Nebraska legislature has enacted statutes fixing

the limitation thereto different from the general statutes of limitations. For instance, the common law did not provide a remedy for one receiving an injury while traveling over a county bridge, and to meet this demand the legislature passed an act, section 2995, Rev. St. 1913 (Laws 1889, ch. 7), for the purpose of making counties liable for damage to person or property. Section 2995 reads in part: "Provided, however, that such action is commenced within thirty days of the time of the injury or damage occurring." Then here in this statute is another statute with reference to the county's liability in an action growing out of defective bridges that makes a statute of limitations peculiar to and especially provides for the very act itself. Then when the legislature passed Lord Campbell's Act, and gave it a statute of limitations peculiar to itself, it simply was doing what it had heretofore done, and so has been and is recognized as peculiar to the inherent power of the legislature itself. This act, with this special provision of the statute of 30 days' limitation, has been held by this court to be constitutional. If then it is constitutional to enact a statute of limitation limiting liability to within 30 days, why is it not constitutional and proper to pass a statute limiting an act to 24 months? The same authority or body of lawmakers that enacted section 2995 enacted section 1429, and each lawmaking body operated and worked and passed this law under the same Constitution, and if, as has been held, it was constitutional to do the one, under the same, or similar circumstances, it would be constitutional to do the other under a like situation. In the case of the *City of South Omaha v. McGavock*, 72 Neb. 382, it is held:

"Where a statute grants a new remedy, and at the same time places a limitation of time within which the person complaining must act, the limitation is a limitation of the right as well as of the remedy, and, in the absence of qualifying provisions or saving clauses,

the party seeking to avail himself of the remedy must bring himself strictly within the limitations.''

Now by analogy this case is absolutely pat, and on the proposition that the legislature is making a special act has a right to attach to this provision a statute of limitation that will provide for a different time than the time provided for in the general statute, this court has sustained that proposition and the constitutionality of such law. Then the plaintiff in this action, it follows, is bound in seeking his remedy to bring himself strictly within the limitations provided in Lord Campbell's Act. See *Swaney v. Gage County,* 64 Neb. 627. In the case of *Ellis v. City of Kearney,* 80 Neb. 51, we have by analogy a case absolutely in point. We have in that case the situation where plaintiff was physically incapacitated to perform a duty enjoined by law; that is, in bringing the action within a certain time. This court held that the law does not excuse nonperformance, and that such a situation is not available to extend the time, or offer an opportunity to fix statutory liability upon another, and in support of this proposition cites *Schmidt v. City of Fremont,* 70 Neb. 577. In that case, which by analogy is the precise situation we have here, we find this court following the same and approving it. In *Ellis v. City of Kearney, supra,* the court say:

''The plaintiff asks this court to hold that the oral notice would suffice. To do so would be to nullify the statute. It is not the province of the courts to make the law, or read into it exceptions not intended by the lawmakers.''

Where is there a scintilla of an excuse to read something into Lord Campbell's Act that was not intended by the lawmakers, nor is there directly, or indirectly, any intention to do the thing which they did not do. To do so would be to nullify the statute and place a construction and meaning upon it that was never intended by the legislature. In *Madden v. Lan-*

*caster County*, 65 Fed. 188, we have a case that went
to the federal court on the question of the statute of
limitations in the special statute in the special road
act, which provided that an action must be "brought
within thirty days after the injury." The court held:
"It does not violate the Constitution of that state,
either by granting to counties a special immunity, or
by amending the general statute of limitations without
containing or repealing the section amended, since,
before the passage of said act, counties were not liable
to suit, and the act imposed a new liability, which
might be limited in any way the legislature saw fit."

That is the precise situation in the case at bar. Be-
fore the passage of the Lord Campbell Act, there was
no provision for damages growing out of injury by
death, and this act meets that situation. Therefore the
legislature had the right to limit it in any way it saw
fit. It always follows that where a statute creates a
new right of action, as Lord Campbell's Act does, a
provision and limitation of time within which an action
must be brought, an objection cannot be made that the
time is unreasonably short and cannot be entertained.
In *Madden v. Lancaster County, supra*, we find a very
learned discussion and the statute upheld, in an opin-
ion by Judge Sanborn. It has also been held by this
court in the case of *Woods v. Colfax County*, 10 Neb.
552, that a county is not liable for an action, or negli-
gence of action by its officers, unless made so by legis-
lative enactment, and sustain the action under the act
of 1889 making counties liable. Then the proposition
looks, both from the standpoint of principle and
analogy, that these decisions settle the question at bar,
and it cannot be denied that the legislature has the
right to fix any time it pleases in the matter of limita-
tions to any special act passed by it.

In the case of *Anthony v. St. Louis, I. M. & S. R. Co.*,
108 Ark. 219, it was held: "In an action against a
railway company for damages for the wrongful killing

of plaintiff's father, when the complaint shows on its face that the action was not brought within the two years required by the statute, the defendant may avail himself of the objection by demurrer." Now this is a case in which the statute of limitations requires the action to be brought within two years, and if in that case, under a statute similar to our own, a defendant may avail himself of the objection by a demurrer, why can he not do it in this case? In the Arkansas case the court also held: "In actions for wrongful death, such actions shall be commenced within two years after the death of such person, since the two statutes relate to different subjects, and there is no necessary repugnance between their provisions." Then we have a case here that is the same, or similar, with respect to statutes of limitations, that we find in the case at bar, wherein in the state of Arkansas we have a general statute of limitations providing for a longer and different time than under Lord Campbell's Act. We find the Arkansas supreme court upheld absolutely the limitation of two years as provided for in Lord Campbell's Act.

In the case of *Rodman v. Missouri P. R. Co.*, 65 Kan. 645, we have the same situation, the same question that we have in the case at bar, and that is: What are the limitations of actions growing out of death by wrongful act? In section 422 of the Civil Code (Gen. St. Kan. 1901, sec. 4871), we have what is known as the Lord Campbell's Act, providing for damage growing out of death by wrongful act which did not exist at common law. Therefore it is interesting to note what the Kansas supreme court holds upon that point. The Kansas court say: "The limitation of two years prescribed in the act in which such action must be commenced is a condition imposed upon the exercise of the right of action granted, and this time is not extended by the pendency and dismissal of a former action, as provided in section 23 of the Code."

Thus these courts hold wherever Lord Campbell's Act has been interpreted, that the right conferred in such statute is a conditional one, and that plaintiffs in such actions must bring themselves clearly within the prescribed conditions necessary to conferring the right of action. So the plaintiff in this case, in seeking remedy under the provisions of Lord Campbell's Act, had to bring himself clearly within the prescribed conditions necessary to conferring the right of action. In support of these views, see *Bretthauer v. Jacobson,* 79 N. J. Law, 223, *Anthony v. St. Louis, I. M. & S. R. Co.,* 108 Ark. 219, and *Beebe v. Doster,* 36 Kan. 666. Therefore both from fact and analogy, and from the plain provisions of Lord Campbell's Act, we conclude that as the plaintiff, John Butera, was killed on November 15, 1911, and this action was instituted on December 5, 1913, that more than two years have elapsed from the death to the filing of the petition, and the issuance of the summons.

Lord Campbell's Act is denominated by the New Jersey supreme court as the "death act," and that court say: "But this provision of the death act is not an ordinary statute of limitations. It operates, not only as a limitation of the remedy given the plaintiff, but also is a limitation of the liability which it creates against defendants." See *Bretthauer v. Jacobson,* 79 N. J. Law 223, 225. This is the real tenor of this act, and this interpretation is put upon it by all the courts speaking with respect to the provisions of the act. New York, Kansas, and Arkansas, without qualification, have held, in cases precisely like the one at bar, that the statute of limitations here involved fixed, not only the limitation of the liability, but the time in which cases may be brought, and by analogy, in a state having a special limitation, this court has held the same thing.

Then, in view of this discussion herein submitted, we conclude that section 1429, Rev. St. 1913, creates a

right of action for damages by death by wrongful act, which did not exist at common law. The enactment of Lord Campbell's Act provides a rule for the statute of limitations which must operate as a condition precedent to a right of action; this time the statute fixes is two years, and the provision is absolute; as it has no saving clause, it must be strictly adhered to.

The finding of the trial judge is in accordance with law and must be

AFFIRMED.

ROSE, J., took no part in the decision.

SEDGWICK, J., dissenting.

Ancient rules for construing statutes were more or less arbitrary, but formerly they were pretty strictly followed by some courts. In some cases those rules resulted in giving to statutes a meaning that clearly the lawmakers never intended. In modern times the courts, at least some of them, are more careful to ascertain the real intention and meaning of legislation. If, from the purpose of the statute, that is, the defect in the law that it was proposed to remedy, in view of existing conditions that are known by everybody, and the form and language of the statute itself, the real intention and meaning of the legislature can be ascertained, that intention and meaning should control the courts.

Under the present decision, a defendant who has laid himself liable for damages under the statute construed can defeat the claim for damages and relieve himself from all liability by absconding or concealing himself until the limitation named in the statute has expired. No other statute of limitations is construed to permit this result. Did the legislature intend such a result? They reduced the limitation for ordinary actions for which there is no specific limitation provided in the general Code from four to two years, which is a longer period than is provided for various actions particularly specified. They gave the injured party a new right of action, a remedy which he did

not have before, and we all agree that he must accept the limitation which the legislature saw fit to place upon that remedy. Did the lawmakers intend to make that remedy depend upon a contingency that might be under the control of the very party against whom the remedy is given? There is a general provision of the Code: "If, when a cause of action accrues against a person, he be out of the state, or shall have absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he come into the state, or while he is absconded or concealed." Rev. St. 1913, sec. 7577. The act we are construing has a special limitation, which is in positive language: "Every such action shall be commenced within two years after the death of such persons" (Rev. St. 1913, sec. 1429) and will not admit of an exception or qualification. This is an established rule of construction and has been frequently applied in this state, and in fact the plaintiff concedes in his brief that this rule applies in this case; but the majority opinion is entirely devoted to its discussion. Conceding then that such actions "must be commenced within two years," what shall we say as to the intention of the legislature as to when such action shall be deemed to be commenced. There is a general provision of the Code that "An action shall be deemed commenced, *within the meaning of this chapter,* as to the defendant, at the date of the summons which is served upon him." Rev. St. 1913, sec. 7580. This is in derogation of the common law. The general rule is that an action is deemed commenced, within the meaning of the limitation statutes, when the pleadings are filed in court and summons issued, and a good faith attempt to get service is made. 1 Cyc. 747; 1 R. C. L. p. 338, sec. 20. In enacting the statute we are construing, did the legislature intend that this special statute should apply to the new act, or was the act made complete in itself as to this as

well as the other special provisions of the Code, relying upon the common-law rule? This is the question discussed and relied upon by the plaintiff in his brief, .but ignored in the majority opinion which discusses at large, and with some repetition, the point which is conceded. The statute expressly names and fixes the period of limitation, and although so much depends upon the meaning which it was intended to give to the words, "shall be commenced," there is no express explanation or provision upon that point in the act. The defendant properly urged this fact as indicating that it was intended that the special provision of the Code as to when an action is deemed to be commenced shall apply to this act. But this suggestion is not, as it seems to me, sufficient to determine the matter. Section 7580 expressly limits its application to the actions specified in the chapter of which it is a part, "An action shall be deemed commenced, *within the meaning of this chapter*," thereby expressly limiting its application to statutes under which the limitation is not allowed to run while the defendant conceals himself and cannot be served. Since, in this act, the two years' limitation is absolute whether service can or cannot be made, it begins to run when the action is *commenced.* As to when an action should be deemed commenced, a peculiar provision, not one generally recognized, expressly made applicable to a particular chapter of the Code, would not necessarily be thought to apply to a separate and distinct act which disregarded other important provisions of the general Code. If the thought had occurred to the lawmakers that the courts might technically apply some ancient rules of construction and hold that one special provision of the general Code had been rejected and another retained, and so their remedy would be rendered nugatory whenever the defendant could evade service, they would have declared more definitely the intention of the statute. When we consider the defect in the law which this

statute was intended to remedy, the conditions then existing which are well known by all, and the statutes then existing, we must conclude from a consideration of this statute itself that the intention of the legislature was that under this statute an action is deemed commenced as the common law declares. In this case the plaintiff acted in good faith and commenced an action before the two years expired, had summons issued, and had a summons in garnishment also issued. The garnishment summons was properly served, and the garnishee appeared specially and made some objections to the form of the petition, and a new garnishment summons was issued, so that if Lord Campbell's Act is complete in itself and an action is deemed to be commenced as at common law and without reference to the special provisions of the Code, the action was in time.

The legislature never intended that a just cause of action could be defeated, as this action is now defeated.