GEORGE R. MULLER, PERSONAL REPRESENTATIVE OF THE ESTATE OF AMY SUE MULLER, DECEASED, APPELLANT, V. HAROLD THAUT, M.D., APPELLEE.

430 N.W.2d 884

Filed October 28, 1988.    No. 86-391.

William A. Wieland, of Healey, Wieland, Kluender, Atwood & Jacobs, for appellant.

Mark A. Christensen, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BURKHARD, D.J.

BURKHARD, D.J.

On October 17, 1985, George R. Muller, as personal representative of the estate of Amy Sue Muller, deceased, commenced a wrongful death action on behalf of the estate of Amy Sue Muller, his infant daughter, upon the allegations of professional negligence contained in his petition against the defendant, Harold Thaut, a physician. George Muller and Bonnie K. Muller are husband and wife and were the parents of Amy Sue. Plaintiff's first cause of action was for wrongful death, and plaintiff's second cause of action was for conscious pain and suffering sustained by Amy Sue prior to her death, and for funeral expenses. The plaintiff alleged that the defendant's negligence had caused the death of Amy Sue Muller following her birth on August 3, 1976, and further alleged that the action was not barred by the statute of limitations applicable to professional negligence actions or wrongful death actions.

Plaintiff alleged in his petition that by reason of defendant's negligence Amy Sue died 37 minutes after her birth on August 3, 1976. Plaintiff alleged that defendant advised the parents of Amy Sue that Amy Sue had been severely deformed, was not expected to live, and would have been retarded; that her lungs were congested; and that she died because of respiratory problems. Plaintiff alleged that following an August 4, 1976, autopsy on the body of Amy Sue, defendant advised the parents that the autopsy revealed that they need not worry about the possibility of defects in later children, but defendant did not further discuss the cause of death.

Plaintiff alleged that he and his wife relied upon the explanations and advice of the defendant as their family physician, sought no further information as to the death of Amy Sue, and did not see the written autopsy findings or the death certificate of Amy Sue.

Plaintiff alleged that in June of 1985, he and his wife were advised that there might be life insurance benefits payable by reason of Amy Sue's death and that the Mullers were advised to obtain a copy of the death certificate. The plaintiff alleged that on June 20, 1985, upon the Mullers' obtaining a copy of the death certificate signed by the defendant, they discovered

defendant's statement thereon that the cause of death was "a subdural hemorrhage and a laceration of the falx cerebri and the left tentorium cerebelli," the same being traumatic injuries to Amy Sue.

Plaintiff alleged that the statutes of limitations on professional negligence and wrongful death had been tolled and had not imposed a limitation on the cause of action for wrongful death by reason of the fraudulent misrepresentation and concealment of the facts by the defendant as to the cause of death. Plaintiff alleged defendant was now estopped to invoke the provisions of the statutes of limitations to his benefit.

The defendant, in his amended answer to plaintiff's first cause of action, denied, among other things, any negligence on his part, and alleged that plaintiff's first cause of action was barred by the applicable statute of limitations.

Defendant filed his motion for partial summary judgment as to plaintiff's first cause of action, alleging that it was barred by the applicable statute of limitations. Plaintiff dismissed his second cause of action, and a hearing was held upon the defendant's motion for partial summary judgment on March 27, 1986.

On April 16, 1986, the district court entered its judgment finding that plaintiff's decedent died on August 3, 1976, that plaintiff instituted this action on October 17, 1985, that the action was barred by the provisions of Neb. Rev. Stat. § 30-810 (Reissue 1985), and that plaintiff's allegations of fraudulent misrepresentation or concealment were unavailing and the action was barred. Plaintiff's first and only remaining cause of action was dismissed, and plaintiff appealed to this court.

The plaintiff's assignments of error can be boiled down to one: The court erred in finding that plaintiff's action was barred by the 2-year statute of limitations contained in § 30-810. The plaintiff basically contends in that regard that the alleged fraudulent concealment by the defendant renders the wrongful death 2-year statute of limitations unavailable to the defendant.

This court has not previously addressed the issue raised in this appeal as to the effect on the 2-year limitation of a failure to discover a wrongful death cause of action because of fraudulent

concealment by the alleged tort-feasor.

In an action for wrongful death brought under Neb. Rev. Stat. § 30-809 (Reissue 1985), § 30-810 provides: "Every such action . . . shall be commenced within two years after the death of such person. It shall be brought by and in the name of his personal representatives, for the exclusive benefit of the widow or widower and next of kin."

The defendant relies strongly on *Gengo v. Mardis*, 103 Neb. 164, 170 N.W. 841 (1919). In *Gengo*, one John Butera came to his death in Omaha, Nebraska, on November 15, 1911, while employed as a workman on the Flatiron Building. Paul Gengo became administrator of Butera's estate and on December 5, 1913, as such administrator, filed an amended petition against John C. Mardis, doing business as the J. C. Mardis Company, charging Mardis with the wrongful death of Butera. The action was commenced under the wrongful death statute in existence at the time, which provided that every such action shall be commenced within 2 years after the death of said person. A demurrer was filed to the petition. The demurrer was sustained by the district court for Douglas County, Nebraska, on the ground that the petition did not state a cause of action, as more than 2 years had elapsed from the accruing of said cause to the beginning of the action.

In affirming the district court, this court stated that the purpose of the wrongful death statute, commonly known as Lord Campbell's Act, "was to prescribe limitations and a remedy for a cause of action which did not exist at common law, for at common law the cause of action died with the death of the claimant." 103 Neb. at 165, 170 N.W. at 841.

The *Gengo* court pointed out that the 2-year limitation in the wrongful death statute was contrary to the general statutory provisions with respect to limitations, as the general statutes provided that when a party places himself outside the jurisdiction of the court, absconds, or stays in hiding so that service cannot be had upon him, then the statute of limitations shall cease to operate, while the wrongful death statute

> has its provisions checked and hemmed in as hereinbefore stated, and every action brought under it must be commenced with two years. . . . We are met with the

proposition that we should construe the statute of limitations as provided for in section 1429 [the wrongful death statute], together with section 7577 [the general statutes of limitations], and the toll for the time which defendant stayed away from the jurisdiction of the court should be allowed, and, if this was done, then the petition states a cause of action.

103 Neb. at 166, 170 N.W. at 841.

In strictly construing the 2-year limitation in the wrongful death statute, this court held that as said statute (Rev. Stat. § 1429 (1913)) was

a mere paragraph that comprises an entire act beginning with 1420, and was made with reference to this principal act and independent of any other, it was made to control and provide absolutely a time within which an action shall be commenced. If it were not so, then it would have been very easy for the legislature to have the same saving clause that is found under section 7577; but inasmuch as it does not contain any exception, or any such provision, and no saving clause whatever, it is evident that it means just what it says . . . . If there was any saving clause provided for in this section 1429, why was it not placed there? If it intended to provide a condition which modifies and stops the statute of limitations, then why did it not say so? The answer is: It was never intended to be any other way than the way that we find it.

103 Neb. at 167, 170 N.W. at 841-42.

In affirming the finding of the trial judge, the *Gengo* court concluded:

[S]ection 1429 . . . creates a right of action for damages by death by wrongful act, which did not exist at common law. The enactment of Lord Campbell's Act provides a rule for the statute of limitations which must operate as a condition precedent to a right of action; this time the statute fixes is two years, and the provision is absolute; as it has no saving clause, it must be strictly adhered to.

103 Neb. at 172-73, 170 N.W. at 844.

The *Gengo* decision is almost 70 years old, and apparently the 2-year limitation has not changed over the years. Defendant

cites *Erspamer Advertising Co. v. Dept. of Labor*, 214 Neb. 68, 74, 333 N.W.2d 646, 649 (1983), which states: "Generally, where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of its intent." In *Cass Constr. Co. v. Brennan*, 222 Neb. 69, 76, 382 N.W.2d 313, 318 (1986), it was held: "We have repeatedly held that in considering the meaning of a statute, we will, if possible, discover the legislative intent from the language of the statute and give it effect. We will not read a statute as if open to construction as a matter of course."

However, none of the cases involve the issue as to whether or not one who conceals material facts or misrepresents facts necessary to the discovery of the existence of a cause of action against him is estopped to avail himself of the statute of limitations as a defense. Along these lines it has been suggested that the wrongful death statute's 2-year limitation is not a technical statute of limitations, but is a statute of creation and is more analogous to a condition precedent. This seems to be an unwarranted and technical play on words. Section 30-810 provides that the action shall be commenced within 2 years after death. Various limitation of action statutes under chapter 25, article 2, of our statutes provide that the particular action "can only be brought within" a specified number of years after the cause of action shall have accrued. The language in § 30-810 that the wrongful death action "shall be commenced within two years after the death of such person" means in essence and for all logical and practical purposes that such action can only be brought within 2 years after the death of such person. *Gengo v. Mardis*, 103 Neb. 164, 170 N.W. 841 (1919), referred to the "statute of limitations" in the wrongful death statute. The defendant, in his motion for partial summary judgment, stated that "the first cause of action stated in plaintiff's Petition is barred by the applicable statute of limitations." The 2-year limitation in § 30-810 is a statute of limitations.

On the issue of fraudulent concealment, "A physician is under a duty to disclose material information to his patient, and failure to do so results in fraudulent concealment." *Martin v. Rinck*, 501 N.E.2d 1086, 1089 (Ind. App. 1986). "Material

information" includes the cause of death of a patient.

In *MacMillen v. A. H. Robins Co.*, 217 Neb. 338, 348 N.W.2d 869 (1984), the plaintiff alleged that in March of 1971, she was implanted with a Dalkon Shield and that in November of 1978, her physician found that she had an abscess and infection in her uterus, and she underwent an abdominal hysterectomy with bilateral oophorectomy. Plaintiff alleged that her injury was caused by the defects in the Dalkon Shield and that the defendant had concealed information regarding the dangers of use of the Dalkon Shield. The defendant filed a demurrer alleging that the plaintiff did not have capacity to sue and that any cause of action was barred by the statute of limitations. The trial court sustained the demurrer and dismissed plaintiff's amended petition. In reversing the district court on the statute of limitations issue, this court stated as follows:

> The issue to be determined is whether the defendant is estopped from raising the statute of limitations as a defense because defendant fraudulently concealed its knowledge of the dangerousness of the Dalkon Shield. In *Rucker v. Ward*, 131 Neb. 25, 33, 267 N.W. 191, 195 (1936), we said, " 'One who wrongfully conceals a material fact necessary to the accrual of a cause of action against him, and such concealment causes the opposite party to delay the filing of suit, cannot avail himself of the statutes of limitation as a defense;'...." In *Luther v. Sohl*, 186 Neb. 119, 121, 181 N.W.2d 268, 269 (1970), we stated that "estoppel may be applied to prevent a fraudulent or inequitable resort to a statute of limitations." We also stated that "if a plaintiff has ample time to institute his action, after the inducement for delay has ceased to operate, he cannot excuse his failure to act within the statutory time on the ground of estoppel." *Id.* at 122, 181 N.W.2d at 270.

*Knaysi v. A. H. Robins Co.*, 679 F.2d 1366 (11th Cir. 1982), is similar to the present case. In that case, Knaysi alleged that her spontaneous septic abortion was caused by the Dalkon Shield and that Robins had concealed its knowledge that septic abortions occurred in connection

with the use of the Dalkon Shield. The eleventh circuit reversed the trial court's grant of summary judgment, which was made on the basis that the action was time barred. The eleventh circuit held that Knaysi had adequately pleaded facts which, if proven, could constitute an equitable estoppel to raising the statute of limitations as a defense. The court stated at 1370: "Having determined that the facts alleged could, if proved, estop Robins from pleading the bar of the statute of limitations, we further conclude that the issue of equitable estoppel was one inappropriate for summary judgment as there exist genuine issues of material fact to be resolved at trial. First, there are obvious questions of fact regarding the alleged misrepresentations made by Robins. In *Dupuis v. Van Natten*, 61 A.D.2d 293, 402 N.Y.S.2d 242 (1978), the Appellate Division, affirming the trial court's holding that triable issues of fact precluded entry of summary judgment for defendant, noted the 'bona fide issues of fact concerning the alleged misrepresentations which resulted in plaintiffs' failure to institute a timely action.' *Id*. at 295, 402 N.Y.S.2d at 243.

"In addition, the highest state court in New York recently has endorsed the notion that the plaintiff's due diligence in bringing suit must 'be demonstrated by the plaintiff when he seeks the shelter of the doctrine [of equitable estoppel].' *Simcuski v. Saeli*, 44 N.Y.2d at 450, 377 N.E.2d at 717, 406 N.Y.S.2d at 263. The Court of Appeals went on to state: 'Whether in any particular instance the plaintiff will have discharged his responsibility of due diligence in this regard must necessarily depend on all the relevant circumstances. . . . *It is not* possible or *appropriate*, however, on the present motion [to dismiss] addressed to the pleading, . . . to determine whether this plaintiff met her obligation of due diligence when she instituted the present action . . . .' *Id*. (emphasis added). Other cases in the New York courts echo the conclusion that the question of a plaintiff's due diligence is a question of fact unsuited for summary judgment. In *Renz v. Beeman*, a diversity action in which

New York law governed, the Second Circuit opined 'that the test for timely knowledge under the doctrine of equitable estoppel is similar to that set forth with regard to fraud in CPLR § 213(8)—"could with reasonable diligence have discovered it." ' 589 F.2d at 751-52. In *Erbe v. Lincoln Rochester Trust Co.,* 3 N.Y.2d 321, 144 N.E.2d 78, 165 N.Y.S.2d 107 (1957), a fraud action, the New York Court of Appeals elaborated on this reasonable diligence test and the inappropriateness of summary disposition: '[T]he plaintiffs will be held to have discovered the fraud when it is established that they were possessed of knowledge of facts from which it could be reasonably inferred, that is, inferred from facts which indicate the alleged fraud. Ordinarily such an inquiry presents a mixed question of law and fact . . . and, where it does not conclusively appear that the plaintiffs had knowledge of facts of that nature a complaint *should not be dismissed on motion.' Id.* at 326, 144 N.E.2d at 80-81, 165 N.Y.S.2d at 111 (citations omitted) (emphasis added). *See also Erbe v. Lincoln Rochester Trust Co.,* 13 A.D.2d 211, 214 N.Y.S.2d 849 (1961), *appeal dismissed,* 11 N.Y.2d 754, 181 N.E.2d 629, 226 N.Y.S.2d 692 (1962) (motion to dismiss should be denied and plaintiff permitted to litigate estoppel issue). In light of these cases we must conclude that the Knaysis' diligence in pursuing their claims against Robins is a triable issue of fact in this case."

217 Neb. at 341-44, 348 N.W.2d at 871-72.

The equitable doctrine of estoppel was discussed at length by this court in *State Farm Mut. Auto. Ins. Co. v. Budd,* 185 Neb. 343, 346, 175 N.W.2d 621, 623-24 (1970), wherein it stated:

By the great weight of authority, the equitable doctrine of estoppel in pais may, in a proper case, be applied to prevent a fraudulent or inequitable resort to a statute of limitations and a defendant may, by his representations, promises, or conduct be so estopped where the other elements of estoppel are present. See Annotation, 24 A.L.R.2d 1417. "Equitable estoppel rests largely on the facts and circumstances of the particular case and will be applied where the wisdom and justice of the principle are

founded upon equity, morality, and justice in accordance with good conscience, honesty, and reason. Under such circumstances, the doctrine subserves its true purpose as a practical, fair, and necessary rule of law." Koop v. City of Omaha, 173 Neb. 633, 114 N.W.2d 380 [1962].

"Equitable estoppels cannot in the nature of things be subjected to fixed and settled rules of universal application like legal estoppels, nor be hampered by the narrow confines of a technical formula.

"Equitable estoppel rests largely on the facts and circumstances of the particular case . . . .

" '. . . a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon.' " National Union Fire Ins. Co. v. Bruecks, 179 Neb. 642, 139 N.W.2d 821 [1966].

This court in *State Farm, supra*, also quoted as follows from *Rupley v. Huntsman*, 159 Cal. App. 2d 307, 324 P.2d 19 (1958):

"When the act or promise of one causes another to do or forbear to do something which he otherwise would have done, the other is estopped from taking advantage of the act or omission caused by his own act or promise. One cannot justly or equitably lull his adversary into a false sense of security, and thereby cause him to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his conduct as a defense to the action when brought."

185 Neb. at 347, 175 N.W.2d at 624.

"Silence on the part of the physician for the statutory period should not destroy the rights of the patient." *Spath v. Morrow*, 174 Neb. 38, 43, 115 N.W.2d 581, 584-85 (1962).

The reasoning behind the doctrine of fraudulent concealment as applied to a statute of limitations defense was discussed in *Colbert v. Waitt*, 445 N.E.2d 1000, 1002-03 (Ind. App. 1982), as follows:

Before we address whether summary judgment was properly entered, we note that the doctrine of fraudulent concealment is as applicable to the statute of limitations

defense under I.C. 16-9.5-3-1 [medical malpractice statute of limitations] as it was to the statute of limitation defense based upon the former medical malpractice act. See, *Guy v. Schuldt*, (1956) 236 Ind. 101, 138 N.E.2d 891. This doctrine is not based upon a construction of the statute. Rather, the doctrine is predicated on the principle of estoppel that one who by deception or any violation of duty towards the plaintiff, conceals material facts and thereby prevents the discovery of the wrong, should not be permitted to take advantage of his own deceit or concealment by asserting the statute of limitations. *Guy, supra.* The doctrine is not an "exception" to the rule of our malpractice limitation statute, but constitutes an equitable estoppel which precludes certain defendants from asserting the statutory bar. *Bronckhorst v. Taube*, (1976) 168 Ind.App. 132, 341 N.E.2d 791. Before the doctrine of estoppel may be used to bar the defendant's use of the statute of limitations, the fraud must be of such character as to prevent inquiry, or to elude investigation, or to mislead the party who claims the cause of action. *Guy, supra* 138 N.E.2d at 894.

In *Glus v. Brooklyn Eastern Terminal*, 359 U.S. 231, 79 S. Ct. 760, 3 L. Ed. 2d 770 (1959), petitioner, claiming that respondent was estopped from pleading the statute of limitations because it had induced delay by representing to the petitioner that he had 7 years in which to sue, brought an action against the respondent in federal district court under the Federal Employers' Liability Act, after expiration of the 3-year statutory period of limitation, to recover damages for an industrial disease he allegedly contracted while working for respondent. In finding that the district court erred in dismissing the case on the ground that it was barred by the 3-year limitation, the Court held that if the petitioner can prove that respondent's responsible agents conducted themselves in such a way that he was justifiably misled into a good-faith belief that he could begin his action at any time within 7 years after it accrued, he is entitled to have his case tried on the merits. The Court went on to say:

To decide the case we need look no further than the maxim

that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.

359 U.S. at 232-33.

Fraudulent concealment as it relates to rendering a statute of limitations unavailable has been discussed in other cases. In *Halpern v. Barran*, 313 A.2d 139, 143 (Del. Ch. 1973), the court held: "Where there has been fraudulent concealment from a plaintiff, the statute is suspended only until his rights are discovered or until they could have been discovered by the exercise of reasonable diligence." See, also, *Alford v. Summerlin*, 362 So. 2d 103 (Fla. App. 1978).

In 51 Am. Jur. 2d *Limitation of Actions* § 147 at 717-19 (1970), the following is set forth:

The general rule supported by the decisions in most jurisdictions is that the fraudulent concealment of a cause of action from the one to whom it belongs, by the one against whom it lies, constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action; under this rule, one who wrongfully conceals material facts and thereby prevents discovery of his wrong or the fact that a cause of action has accrued against him is not permitted to assert the statute of limitations as a bar to an action against him, thus taking advantage of his own wrong, until the expiration of the full statutory period from the time when the facts were discovered or should with reasonable diligence have been discovered. Stated in another way, the general trend of the decisions is in support of the rule that where a party against whom a cause of action has accrued in favor of another prevents such other, by actual fraudulent concealment, from obtaining knowledge thereof, or the fraud is of such a character as to conceal itself, the statute of limitations will begin to run from the time the right of action is discovered or by the exercise of ordinary

diligence might have been discovered. This rule finds application most frequently in actions based upon fraud or in which fraud is the gist of the action, but it is by no means restricted to actions of that character; the rule applies regardless of the nature of the cause, if the requisite element of fraudulent concealment of the cause of action is present, and it applies in actions at law as well as in suits in equity. In many jurisdictions the limitation statutes contain exceptions in favor of one from whom a cause of action is concealed, usually allowing him a certain time after discovery of the fraudulent concealment within which to bring suit, although he is entitled in any case to the full statutory period from the date of the act creating his cause of action.

The reasoning adopted in support of the general rule is that to hold that the statute of limitations ran in favor of a person who had concealed the cause of action under such circumstances would be to permit the defendant to take advantage of his own wrong and to sustain a defense of which in good conscience he ought not to be permitted to avail himself. Since the delay of bringing the suit is due to the fraud of the defendant, the cause of action against him ought not to be considered as having accrued until the plaintiff could obtain the knowledge that he had a cause of action. It would be not only subversive of good morals but contrary to the plainest principles of justice to permit one practicing a fraud and then concealing it to plead the statute of limitations when, in fact, the injured party did not know of and could not with reasonable diligence have discovered the fraud. Accordingly, it has been held that a court of equity may, by the use of its injunctive power, disarm the defendant from using the statute of limitations in an action at law where there has been a fraudulent concealment by the defendant of the cause of action against him, or when the defendant has employed means to mislead the plaintiff or to hide from him the fact that a cause of action has arisen.

For a personal representative to commence a wrongful death action in a timely manner, it is necessary for the personal

representative to be aware of facts giving rise to the cause of action.

By misrepresenting or concealing facts, a physician, or any other person, may appreciate a twofold benefit. He may avoid having his skill and judgment questioned, and he may escape liability for the negligent harm he has caused. It is not the policy of the law to encourage such conduct.

A motion for summary judgment shall be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Neb. Rev. Stat. § 25-1332 (Reissue 1985). In reviewing a summary judgment, this court must take the view of the evidence most favorable to the party against whom the motion is directed and give that party the benefit of all favorable inferences which may be drawn from the evidence. Summary judgment is an extreme remedy to be awarded only when the issue is clear beyond all doubt. *Schatz v. Vidlak*, 229 Neb. 4, 424 N.W.2d 613 (1988).

We conclude that fraudulent concealment, if proved by the plaintiff, estops the defendant from asserting the statute of limitations as a defense to plaintiff's wrongful death action under § 30-810. This is an issue of material fact, and the defendant was not entitled to summary judgment as a matter of law.

We are not saying, or in any way implying, by this opinion that the defendant is guilty of fraudulent concealment. In fact, that is expressly denied by the defendant in his answer. The issue of fraudulent concealment is raised by the pleadings and will only be resolved by a trial on the merits of the case.

The judgment of the district court in sustaining defendant's motion for partial summary judgment is reversed, and this matter is remanded to the district court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.