IN RE ADOPTION OF TRYSTYN D.
VICKI C., APPELLANT, V. DAVID PRESTIDGE
AND RONDA PRESTIDGE, APPELLEES.
600 N.W. 2d 508

Filed September 28, 1999.   No. A-98-1177.

Stacy C. Nossaman-Petitt, of Nossaman Petitt Law Firm, for appellant.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellees.

IRWIN, Chief Judge, and MUES and INBODY, Judges.

MUES, Judge.

## INTRODUCTION

This case presents the issue of whether the doctrine of equitable estoppel is available to estop a party 'from asserting the 2-year limitation period in Neb. Rev. Stat. § 43-116 (Reissue 1993) as a defense to an action attacking the validity of an adoption decree entered in this state. We conclude it is.

## PROCEDURAL BACKGROUND

On May 7, 1992, David Prestidge and Ronda Prestidge filed a petition in the county court for Scotts Bluff County to adopt Trystyn D. In the Prestidges' petition, they alleged, inter alia, that Trystyn was born on October 27, 1991, and had been in their care and custody since October 29, 1991, and that the natural parents of Trystyn had each signed a relinquishment and consent to the adoption. Said relinquishments and consents were attached to the petition. The Prestidges subsequently moved the court for an order authorizing notice by publication and informed the court that they were unaware of the whereabouts of Trystyn's parents, Vicki C. and Robert D. The motion was granted. After the requisite notice was given, the court entered a decree of adoption on June 18, 1992.

On April 13, 1998, Vicki filed a motion in the county court for Scotts Bluff County to set aside the adoption of Trystyn. In Vicki's motion, she alleged the following:

On April 19, 1991, Vicki was married to Robert. At that time, Vicki was 16 years of age. Trystyn was born on October 27, 1991. Vicki signed over guardianship of Trystyn to the

Prestidges, cousins of Robert. A motion for appointment of guardian was filed on October 31. On November 19, a revocation to consent was signed by Vicki. On December 12, Vicki's attorney filed a motion to withdraw and informed the court that " '[h]e h[ad] been advised that [Vicki] left [the State of Nebraska] with Robert . . . and returned to the State of Florida . . . and [she] has not advised us of her whereabouts or her wishes with respect to this matter.' " The court permitted Vicki's counsel to withdraw and appointed the Prestidges as Trystyn's guardians.

Vicki further alleged that she had been "fraudulently coerced" into signing the guardianship and adoption papers bearing her signature; that Robert vacationed with her in Florida and then subsequently moved her to Utah, thereby keeping her uninformed as to the proceedings surrounding her minor child; that she was never informed of the adoption proceedings; that at all relevant times, the Prestidges were aware of her physical address and failed to properly notify her; and that due to the "fraud and coercion" of Robert and the Prestidges, Vicki did not become aware of the adoption until June 5, 1997.

On May 19, 1998, the Prestidges demurred to the petition, alleging, inter alia, that the court had no jurisdiction over the Prestidges or Trystyn and that the motion did not state facts sufficient to constitute a cause of action. A hearing was held on September 15. On October 8, the court granted the demurrer and dismissed the action.

In granting the demurrer, the trial court determined that pursuant to the Nebraska Child Custody Jurisdiction Act (NCCJA), it did not have jurisdiction over the matter. The court further found that "*Neb. Rev. Stat.* §43-116 (Reissue 1993), statutorily bars reopening this Decree and would not allow this Court to set aside the adoption in the absence of clearly proven fraud. There is no evidence, no assertion, or proof of or claim of fraud in this case." The court accordingly sustained the demurrer and dismissed Vicki's petition. Vicki timely appeals.

## ASSIGNMENTS OF ERROR

Vicki alleges the trial court erred in determining that it did not have jurisdiction of the matter and in finding that her cause of action was statutorily barred.

## STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Professional Bus. Servs. v. Rosno*, 256 Neb. 217, 589 N.W.2d 826 (1999); *Cotton v. Steele*, 255 Neb. 892, 587 N.W.2d 693 (1999).

On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999); *Brunges v. Brunges*, 255 Neb. 837, 587 N.W.2d 554 (1998).

## DISCUSSION

*Jurisdiction.*

The trial court found:

> [T]he adoptive parents and the child have been non-residents of the State of Nebraska for many years. The present state of residence has acquired a substantial interest in determining the outcome of this dispute. It would clearly be error for this Court to reach a conclusion and have no practical way to enforce that judgment. None of the provisions of *Neb. Rev. Stat.* §43-1203 (Reissue 1993) would justify this Court to hear this Motion under the circumstances in which the principle [sic] parties, the adoptive parents and the child, have long ago established residence in another state.

The court concluded that "it lack[ed] jurisdiction to consider the Motion to Set Aside Decree of Adoption according to *Neb. Rev. Stat.* §43-1203 [NCCJA]." See Neb. Rev. Stat. § 43-1201 et seq. (Reissue 1998). Section 43-1203, the general jurisdictional section of the NCCJA, grants courts of this state that are competent to decide child custody matters the jurisdiction to make child custody determinations by initial or modification decree if certain facts exist.

An initial issue is whether the NCCJA has any applicability to the county court's exercise of jurisdiction over Vicki's motion to set aside the adoption decree. As a general rule, the county

court has exclusive original jurisdiction in matters of adoption. See Neb. Rev. Stat. § 24-517 (Reissue 1995 & Cum. Supp. 1998). See, also, Neb. Rev. Stat. § 43-102 (Reissue 1998); *In re Adoption of C.L.R. and J.M.R.*, 218 Neb. 319, 352 N.W.2d 916 (1984) (appeal from county court order on petition to vacate and set aside adoption decree previously entered by that court). The Prestidges cite no authority which supports the application of the NCCJA to this proceeding. Given our resolution, we need not decide that issue. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994).

Vicki's motion, which we view as the operative pleading for purposes of the demurrer, made no allegation with regard to the residency of the child or the adoptive parents, the home state of the child, the child's or the parties' connections with Nebraska, the availability in this state of evidence concerning the child's present or future care, et cetera. These are all relevant considerations under § 43-1203. It is obvious from the trial court's finding that in sustaining the demurrer on jurisdictional grounds, it considered evidence outside of the motion. The source of that evidence is unclear because, as one would assume, no evidence was offered at the hearing on the demurrer. In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Gordon v. Community First State Bank*, 255 Neb. 637, 587 N.W.2d 343 (1998). A demurrer resolves only defects which appear on the face of a petition. *Pratt v. Nebraska Bd. of Parole*, 252 Neb. 906, 567 N.W.2d 183 (1997).

Even assuming, without deciding, that a proceeding seeking to vacate an adoption decree triggers the provisions of the NCCJA, the determination of whether such jurisdiction exists depends on the evidence and on factual determinations. See, e.g., *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999). A demurrer is not the appropriate procedural method for such factual determinations.

The trial court's sustaining of the demurrer and dismissal on jurisdictional grounds was based upon matters extrinsic to Vicki's motion. This was erroneous. The Prestidges do not assert that there are any allegations in the motion itself which mandate a finding of lack of jurisdiction and none are apparent to us. We make no determination as to whether the NCCJA has any application to Vicki's motion to set aside. See *Kelly v. Kelly, supra* (appellate court is not obligated to engage in analysis which is not needed to adjudicate case in controversy before it). The county court erroneously dismissed the proceeding for lack of jurisdiction on the Prestidges' demurrer.

*Time Limits to Attack Validity.*

The trial court also determined that Vicki's claim was barred by § 43-116, which provides, inter alia:

> When any county court in the State of Nebraska shall . . . hereafter enter of record such a decree of adoption, it shall in like manner be *conclusively presumed* that said adoption and all instruments and proceedings in connection therewith are valid in all respects notwithstanding some defect or defects may appear on the face of the record, or the absence of any record of such court, unless an action is brought within two years from the entry of such decree of adoption attacking its validity.

(Emphasis supplied.)

The trial court concluded that § 43-116 statutorily bars reopening and setting aside the adoption decree absent "clearly proven fraud." It observed that Vicki had not alleged or proved any fraud and thus the 2-year bar applied. Vicki contends that the court correctly concluded that actions based upon fraud are not barred by the statute but argues that the trial court erred in concluding that she had not alleged or proved fraud. The Prestidges argue that § 43-116 operates to bar any action, including one for fraud, brought more than 2 years after entry of the decree. Before addressing Vicki's argument, it is first necessary for us to determine whether § 43-116 operates as a bar to all actions brought more than 2 years after entry of the decree of adoption.

The courts of Nebraska have never before considered whether there are any circumstances that might operate to extend the

period for bringing an action to set aside an adoption under § 43-116. However, the Nebraska Supreme Court recently addressed a very similar issue in a medical malpractice setting in *Schendt v. Dewey*, 246 Neb. 573, 520 N.W.2d 541 (1994). There, Cindy Schendt filed a medical malpractice case against her physician, Dr. John L. Dewey. Schendt alleged that during her treatment for allergies, Dewey recommended various radiation treatments. Dewey treated Schendt over a 10-year period, ending in 1971.

In 1991, Schendt was diagnosed with breast cancer. Schendt filed suit against Dewey, alleging, inter alia, that Dewey was negligent in failing to inform Schendt of the risks of radiation treatment and that Dewey had fraudulently concealed the risks of the radiation treatment, precluding her from taking any preventative actions to lessen the development of cancer or the early detection of the cancer.

Dewey demurred to Schendt's petition, alleging that Schendt's cause of action was barred by Neb. Rev. Stat. § 25-222 (Reissue 1989), which provides that no action for professional negligence may be brought more than 10 years after the services are rendered, regardless of when the negligence is discovered. The trial court agreed and dismissed the action.

On appeal, the Nebraska Supreme Court found that even if Schendt did not discover that she had developed cancer until 1991, § 25-222 barred the institution of suit after 10 years from the date of service, not discovery. However, the Supreme Court went on to state:

> We now deal with the issue as to whether a claim of fraudulent concealment of facts may furnish the basis for equitable estoppel to prevent or delay the running of the statute of repose as to a cause of action for malpractice. The doctrine of equitable estoppel may be applied to prevent a fraudulent or inequitable result of the statute of limitations. *Reifschneider v. Nebraska Methodist Hosp.*, 233 Neb. 695, 447 N.W.2d 622 (1989). Equitable estoppel may be applied to bar a defendant's use of a statute of repose. See *MacMillen v. A.H. Robins Co., Inc., supra.*
>
> One who by deception conceals material facts and thereby prevents discovery of the wrong should not be per-

mitted to take advantage of his or her own deceit or concealment by asserting the statute of limitations or repose. *Muller v. Thaut*, 230 Neb. 244, 430 N.W.2d 884 (1988). In the event that Schendt can amend her petition to establish that Dewey fraudulently concealed a material fact, that this fraudulent concealment prevented her from bringing the action within the confines of § 25-222, and that she brought her action within a reasonable time after discovery of the fraudulent concealment, then it is possible to state a cause of action for malpractice in which Dewey might be equitably estopped from raising the statute of repose. She should have been given that opportunity.

*Schendt v. Dewey*, 246 Neb. at 581-82, 520 N.W.2d at 548.

Here, as in *Schendt*, Vicki does not assert a cause of action for fraud. Instead, albeit somewhat inartfully, she asserts that the natural father and adoptive parents fraudulently concealed material facts preventing discovery of the adoption proceeding. This was done apparently in anticipation of the 2-year limitation period under § 43-116. She also claims that she was fraudulently induced into signing the adoption papers. While we are aware of the obvious policy consideration for the time limit of § 43-116, the principles of equitable estoppel articulated in *Schendt* have their own obvious policy base. That is, one should not be permitted to take advantage of his or her own deceit by asserting the statute of limitations or repose. *Schendt v. Dewey*, 246 Neb. 573, 520 N.W.2d 541 (1994). See, also, *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999) (equitable estoppel available against municipality asserting statute of limitations).

The trial court found, in part, that Vicki had not *proved* fraud. But, the Prestidges did not file a motion for summary judgment. Rather, they demurred to the petition. In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Gordon v. Community First State Bank*, 255 Neb. 637, 587 N.W.2d 343 (1998). It was not incum-

bent upon Vicki to *prove* anything to defeat the Prestidges' demurrer.

■ We agree with the trial court that Vicki's motion deficiently alleged the elements of equitable estoppel based on fraud and fraudulent concealment. However, after a demurrer is sustained, leave to amend is to be given, unless it is clear that no reasonable possibility exists that the plaintiff will be able to correct the defect. *Rice v. Adam*, 254 Neb. 219, 575 N.W.2d 399 (1998). Pursuant to the teachings of *Schendt*, if Vicki can amend her motion to establish that the adoptive parents fraudulently concealed a material fact preventing her from bringing the proceeding within the confines of § 43-116 and that she brought the action within a reasonable time after the discovery of the fraud or concealment, then it is possible to assert grounds to vacate, notwithstanding the 2-year limit of § 43-116. She should be given that opportunity. See *Rice v. Adam, supra.* Of course, whether she can *prove* such allegations or whether there are other affirmative defenses available to the Prestidges are matters not properly before us on this appeal.

This result conforms with that of several other jurisdictions who have faced the issue under similar statutory time restrictions on attacking the validity of adoption decrees.

For example, in *In re Joseph B.*, 258 Ill. App. 3d 954, 956, 630 N.E.2d 1180, 1182 (1994), the natural mother, Angela S., executed a " 'Final and Irrevocable Consent to Adoption' " on July 12, 1991. Pursuant to the order, Joseph B. was placed with his godmother, Z.S., who had agreed to adopt him. In April 1992, Z.S. changed her mind and did not adopt Joseph. The Department of Children and Family Services (DCFS) then took Joseph and placed him in a foster home. On August 13, 1992, without any notice to Angela, DCFS sought and obtained an order terminating Angela's parental rights. On November 16, Angela filed a motion to void her July 12, 1991, consent to adoption and to vacate the August 13, 1992, order terminating her parental rights.

At the hearing on Angela's motion to revoke her consent to adoption, DCFS argued that Angela's motion was untimely and was barred by the applicable statute of limitations, which provided, inter alia, that " '[n]o action to void or revoke a consent

to or surrender for adoption, including an action based on fraud or duress, may be commenced after 12 months from the date the consent or surrender was executed.' 750 ILCS 50/11 (West 1992)." *In re Joseph B.*, 258 Ill. App. 3d at 969, 630 N.E.2d at 1191. Angela's position was that when she signed the consent, it was her understanding that Z.S. was going to adopt Joseph. Angela did not discover that Joseph was no longer living with Z.S. until Easter Sunday 1992. Angela contacted DCFS the next day. When Angela met with a DCFS caseworker several weeks later, Angela informed the caseworker that she wanted Joseph back, and the caseworker informed Angela that it was too late for Angela to do anything. In fact, the statute of limitations had not run at that time.

The trial court found, after receiving evidence, that Angela's action was barred by the statute of limitations. It rejected Angela's equitable estoppel claim.

On appeal, the trial court determined that Angela had consented to the adoption with the understanding that Joseph would be adopted by Z.S. and concluded that it was improper to terminate Angela's parental rights based upon her limited consent to adoption. Nevertheless, the appellate court determined that Angela's action was barred by the aforementioned statute of limitations, stating that it would bar Angela's action even if the judgment terminating her parental rights was void. Next, the appellate court concluded that the statute of limitations was not tolled during the time Angela failed to discover that Joseph had not been adopted by Z.S. In so doing, it reasoned that such a result would

> " 'frustrate the purpose of the Adoption Act, which is to promote stable family relationships free from unnecessary intrusion. . . . The 1982 amendment to the Act was designed to accomplish this objective by cutting off the prolonged ability of the natural parents to set aside an adoption decree. . . . If we accepted the plaintiff's position, allowing an action to set aside an adoption decree from the time of discovery of the fraud would in effect render adoption decrees vulnerable indefinitely to attack. This result would be inconsistent with the aims of the amendment and the overall purpose of the Act.' "

*In re Joseph B.*, 258 Ill. App. 3d 954, 971, 630 N.E.2d 1180, 1192 (1994).

Finally, the appellate court addressed the issue of whether equitable estoppel could preclude the application of the statute of limitations. The court rejected DCFS' argument that equitable estoppel was merely another form of the discovery rule, stating,

" 'Equitable estoppel . . . is not concerned with the running and suspension of the limitations period, but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense . . . because his conduct has induced another into forebearing suit within the applicable limitations period. Its application is wholly independent of the limitations period itself and takes its life, not from the language of the statute, but from the equitable principal [sic] that no man will be permitted to profit from his own wrongdoing in a court of justice. Thus, because equitable estoppel operates directly on the defendant without abrogating the running of the limitations period as provided by statute, it might apply no matter how unequivocally the applicable limitations period is expressed.' "

*Id.* at 974, 630 N.E.2d at 1194.

The appellate court ultimately affirmed the trial court's decision, concluding that based on the evidence presented, the doctrine of equitable estoppel was not established because Angela could easily have discovered that her rights had been terminated during the applicable time period. The court stated that " ' "a party claiming the benefit of an estoppel cannot shut h[er] eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge h[er] ignorance to others." ' " (Emphasis omitted.) *Id.* at 976, 630 N.E.2d at 1195. See, also, *Matter of Drummond*, 123 N.M. 727, 945 P.2d 457 (N.M. App. 1997).

The significance of *In re Joseph B., supra*, to our opinion in the present case is that despite the statute of limitations having run, Angela was not foreclosed from attempting to establish that the opposing parties were equitably estopped to assert it. The ruling by the trial court in the present cases precluded Vicki

from attempting to establish equitable estoppel. As stated earlier, whether she can properly plead or prove it remains to be seen, but she should be granted the opportunity to do so.

## CONCLUSION

The district court erroneously granted the Prestidges' demurrer on jurisdictional grounds. The demurrer was properly sustained for failure to state a cause of action because Vicki's motion defectively alleged equitable estoppel. However, as stated above, the district court erred in dismissing Vicki's motion rather than giving her the opportunity to amend. The matter is reversed, and remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.