..LGREMILLION, Judge.
This appeal arises out of the granting of Summary Judgment in favor of National Casualty Insurance Company (National Casualty) on the issue of whether Lafayette Parish Sheriffs Deputy Anthony Ashy was covered under his employer’s Uninsured Motorist (UM) coverage. For the following reasons, we affirm the trial court’s determination that Sergeant Ashy is not a named insured under the policy and reverse the trial court’s judgment that he was not “occupying” his patrol car as the term is defined in the Sheriff Department’s UM policy.
FACTS AND PROCEDURE
On April 13, 1996, Sergeant Ashy arrived at the scene of an accident at the 500 block of West University Avenue near the intersection of St. John Street, in the city of Lafayette, Louisiana. The accident involved a motorist striking a tree, causing it to fall across a portion of the roadway. After ascertaining the motorist’s well-being, Sergeant Ashy set flares to divert traffic around the accident scene. Thereafter, Lafayette City Police Officer Kyle Monceaux arrived and Sergeant Ashy briefed him on the accident. Just after briefing Officer Monceaux, Sergeant Ashy noticed that a flare, some eighty feet away from his patrol car, had fallen and he walked over to reset the flare. While in the process of returning to his vehicle, Sergeant Ashy was struck by motorist Chanda Migues.
After receiving the policy limit of Mi-gues’ liability insurance, Sergeant Ashy and his wife, Stacy Lajaunie Ashy, sought compensation from National Casualty, the Sheriff Department’s (UM) insurer. Both the Ashys and National Casualty filed separate Motions for Summary Judgment on the issue of whether | ^.Sergeant Ashy was a “covered occupant” under the policy. Based on the Second Circuit’s decision in Valentine v. Bonneville Insurance Co., 28,109 (La.App. 2 Cir. 4/8/96); 672 So.2d 461, the trial court held Sergeant Ashy was a named “insured” under the National Casualty policy and, thus, the policy covered the injuries resulting from the accident. However, in the interim before the trial date, the supreme court handed down its decision in Valentine v. Bonneville Insurance Co., 96-1382 (La.3/17/97); 691 So.2d 665. Based on the supreme court’s reversal of the Second Circuit’s decision in that case, National Casualty refiled its motion for summary judgment. The trial court now found that Sergeant Ashy was not an insured under the Sheriffs Department’s UM policy and, based on the facts of the case, also found that he was not occupying his vehicle. As such, Sergeant Ashy was not covered by the National Casualty policy-
The Ashys appeal the trial court’s determination, asserting that it erred in finding: 1) Sergeant Ashy was not an insured under the National Casualty UM policy 2) that Sergeant Ashy was not within a zone of protection afforded by his unit and, therefore, occupying his vehicle at the time of the accident, and 3) he was not using his patrol car.
SUMMARY JUDGMENT
Summary judgment is designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2). Though there are *443 genuine issues as to liability or the amount of damages, summary judgment may- be rendered on the issue of insurance coverage alone. La.Code Civ. P. art. 966(E). Summary judgment shall be granted if the “pleadings, deposition, answers |3to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. P. art. 966(B). There is no genuine issue of material fact and the motion shall be granted if the adverse party fails to produce factual support to establish that he will be able to satisfy his evidentiary burden of proof at trial. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691. Summary judgments are reviewed de novo applying the same standard of review used by the trial courts in rendering judgments at the trial court level. Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342 (La.1991).
DISCUSSION
It is well settled that the law of Louisiana affords no legal status to the “Parish Sheriffs Department” so that the department can sue or be sued; such status is reserved to the Sheriff. Garner v. Avoyelles Parish Sheriffs Dept., 511 So.2d 8 (La.App. 3 Cir.1987); Ferguson v. Stephens, 623 So.2d 711 (La.App. 4 Cir.1993). The Sheriff, not the “Parish Sheriffs Office,” is the constitutionally designated chief law enforcement officer of the parish. Liberty Mut. Ins. Co. v. Grant Parish Sheriffs Dept., 350 So.2d 236 (La.App. 3 Cir.), writ denied, 352 So.2d 235 (La.1977).
Since the trial court grounded its decision in this ease on the Valentine decision, we will first look to this case for guidance. In Valentine, 691 So.2d 665, a deputy, having observed an intoxicated driver within the city limits of Minden, Louisiana, as per the custom, radioed the city police department for assistance. After being joined by a city police officer, both law enforcement officials proceeded to stop the suspect. After stopping the suspect, it was agreed that the city policeman would | investigate the incident. Deputy Valentine noticed traffic building up, so he began to direct traffic using arm signals and a flashlight. He was involved in directing traffic for five to ten minutes before he was struck by an uninsured motorist.
The injured deputy sought UM benefits under the business automobile insurance policy that named the “Sheriffs Department” as the “named insured.” The trial court initially entered summary judgment in favor of coverage, declaring the deputy was an “insured” under the policy. The policy read as follows:
1.We will pay all sums the “insured” is legally entitled to recover as damages from the owner or driver of an “uninsured motor vehicle”. The damages must result from “bodily injury” sustained by the “insured” caused by an “accident”. The owner’s or driver’s liability for these damages must result from ownership, maintenance or use of the “uninsured motor vehicle”.
For purposes of UM coverage, the policy further defined “who is an insured”: B. Who is an insured
1. You
2. If you are an individual, any “family member”.
3. Anyone else “occupying” a covered “auto” or a temporary substitute for a covered “auto”. The covered “auto” must be out of service because of its breakdown, repair, servicing, loss or destruction.
According to the policy, the word “you” referred to the Named Insured shown in the Declarations. The relevant portion of the declaration stated:
Named Insured & Mailing Address
Webster Parish Sheriffs Department
P.O. Box 877
Minden, LA 71055
The trial court found that there were only two avenues of recovery under the *444 policy, that is, Deputy Valentine would have to be either an “insured” or “occupying” a covered vehicle. The UM insurer asserted that Deputy Valentine was 1 Kneither a named insured, because he did not fall under the scope of “You” as contemplated by the policy, nor was he “occupying” a covered vehicle under the circumstances of the accident.
In affirming the trial court, the Second Circuit held that “You” meant the “Sheriffs Office,” which encompassed the Sheriff as well as his deputies. The court went on to say that had the Sheriff himself been the sole person contemplated as the “insured,” the policy would have so stated. As the court’s ruling was dispositive of the issue of coverage, it did not address whether the deputy was “occupying” his vehicle at the time of the accident.
The supreme court reviewed the matter and overruled the Second Circuit on the issue of whether Deputy Valentine was an “insured” and also found that he was not “occupying” his vehicle at the time of the accident. As such, Deputy Valentine was not covered by the Sheriff Department’s UM policy. In reviewing the issue of coverage, the supreme court held, “the Named Insured under the [Sheriffs Department’s UM policy] is the [Sheriffs Department], not the individual deputies.” Id. at 669. On the question of who was covered, the court explained:
Under the policy, a named insured is provided UM coverage wherever he is, whatever he is doing, and regardless of whether he is on the job or merely tending to his private affairs. Thus, if the Sheriffs deputies are covered as named insureds, coverage would follow them regardless of where they were or what they were doing, thus negating the need for the deputies to obtain UM coverage for themselves. Because the Sheriff, as the employer of the deputies, has no obligation to supply the deputies with UM coverage at all, there is no reason to believe that the Sheriff intended to provide them with UM coverage at all times, all places and under all conditions. In addition, because there is no indication that the sheriffs deputies paid for -UM coverage through the Sheriffs Department, it is much more reasonable to conclude that the Sheriff merely intended to cover his deputies when they were most at risk, i.e. when they were driving or otherwise occupying their patrol cars.

J¿d-

The court further stated that UM coverage is provided to protect against bodily injury damages and that corporations and political entities are legal persons incapable of sustaining this type of damage. Nevertheless, these legal entities purchase UM policies in which they are the named insureds, as these types of policies also provide coverage for “anyone ‘occupying’ a covered auto or a temporary substitution for a covered auto.” ,Id. The court declined to comment on whether the Sheriff, individually, was included as a named insured in this case.

Interpretation of Contract Provisions

Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La.Civ.Code art. 2048. The parties’ intent, as reflected by the words of the policy, determines the extent of coverage and such intent is to be determined in accordance with the general, ordinary, plain, and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. Ledbetter v. Concord Gen. Corp., 95-0809 (La.1/6/96); 665 So.2d 1166, amended, 95-0809 (La.4/18/96), 671 So.2d 915. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La.Civ.Code art. 2050. If the wording of an insurance policy is clear and expresses the intent of the parties, the agreement must be enforced as written. Id. An insurance policy should not be interpreted in an unreasonable or *445 strained manner so as to enlarge or restrict its provisions beyond what was reasonably contemplated by its terms or so as to achieve absurd conclusions. Reynolds v. Select Prop., Ltd., 93-1480 (La.4/11/94); 634 So.2d [71180. If ambiguity remains after applying the general rules of construction, those provisions are construed against the insurer and in favor of the insured. Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94); 632 So.2d 736.

Assignment of Error Number One

The Ashys assert that the trial court erred in finding that Sergeant Ashy was not an “insured” under the National Casualty policy. They point out that the Sheriff, individually, and not the “Parish Sheriffs Department,” is the constitutionally designated chief law enforcement officer of a parish. Liberty Mutual, 350 So.2d 236. Because Louisiana affords no legal status to a “Parish Sheriffs Department,” they assert that an insurance policy naming the “Lafayette Parish Sheriffs Department,” as the “named insured” or “You” under the policy, creates ambiguity as to who is insured. This ambiguity is construed in the Ashys’ favor. See Pareti v. Sentry Indem. Co., 536 So.2d 417 (La.1988).
The Ashys further claim that a Sheriffs Department is analogous to an association, which is defined by its membership.[1] Therefore, they claim “You” refers to the Sheriffs Department, which is an association with no separate legal existence, and, as such, it is defined by its membership, i.e. — the Sheriff and his employees. Thus, construing the ambiguous policy language in favor of the insured, the Ashys argue that the Sheriff and his employees are covered under the policy as “named insureds.”
Is As the provisos of the National Casualty policy are identical to those in Valentine, 691 So.2d 665, our inquiry is brief. As illustrated supra, the Louisiana Supreme Court determined that the use of “Sheriff Department” as the “named insured” does not create ambiguity. The court determined in Valentine that the named insured under that UM policy was the “Sheriffs Department, not the individual deputies.” Id. at 669. The supreme court reasoned that, had the policy covered the deputies as “named insureds,” coverage would have extended to them regardless of where they were or what pursuits they were engaged. As there was no indication that the Sheriff intended to provide this scope of coverage, the court in Valentine concluded that the Sheriff merely intended to cover his deputies when they were most at risk; when driving or otherwise occupying their vehicles. Id. Under the reasoning set forth in Valentine, we find no merit in this assignment of error.

Assignment of Error Number Two

The Ashys also appeal the trial court’s determination that Sergeant Ashy was not “occupying” his vehicle at the time of the accident. The UM policies of both this and the Valentine case define “occupying” as “in, upon, getting in, on, out or off.” Id. at 671. The Ashys assert that Valentine can be distinguished from the case at bar. In Valentine, the supreme court relied on Armstrong v. Hanover Ins. Co., 614 So.2d 312 (La.App. 4 Cir.), writ denied, 617 So.2d 908 (La.1993), in determining that Deputy Valentine was not “occupying” his vehicle as contemplated by the language of his employers’ UM policy. The language defining “occupying” in Hanover is identical to the language in both this and the Valentine case. In Hanover, the widow of a flagman working alongside a highway construction site sued her husband’s |9employer’s UM insurer claiming her husband was “occupying” an insured vehicle at the time of his death. In determining *446 that the plaintiffs husband was not covered, the Fourth Circuit stated:
When the accident occurred the decedent was functioning as a flagman on the highway. [The decedents] activity with respect to a tractor working on the side of the highway and a pick-up truck assigned to him cannot possibly be construed as “in” one of these vehicles, “upon” one, “getting in” one, “getting on” one, “getting out” one, or “getting off’ one without distorting the plain words of the policy.
Id. at 313.
The Fourth Circuit determined that the general, ordinary, plain, and popular meaning of the words defining “occupying” prohibited finding coverage under circumstances in which an individual was doing a job having no substantial nexus to any insured vehicle. . Indeed, the only basis for finding coverage in Hanover would have been because the decedent flagman had been assigned a covered vehicle as part of his job. The supreme court adopted the Hanover reasoning in Valentine, finding that Deputy Valentine severed the nexus with his vehicle when he took up the duty of directing traffic, much like the flagman in Hanover.
We find that the case sub judice can be distinguished from Hanover and its progeny. In this case, Sergeant Ashy only left the vicinity of his patrol car for a moment to reset a flare, and was in the process of returning when he was struck by the uninsured/underinsured motorist. At no time had he taken up a task which sufficiently removed him in time and space from his vehicle. In Hanover, the decedent was a flagman by occupation; once at a job site he was not required to use his vehicle. In Valentine, Deputy Valentine left his vehicle to direct traffic, had done so for five to ten minutes, and was still directing traffic when he was hit. The court | inspecifically noted, “At no time after he made the initial stop of the DWI suspect did Deputy Valentine return to or attempt to return to his vehicle.” Valentine, 691 So.2d at 671. “He was directing traffic when he was hit and injured.” Id. We note that the supreme court found the definition of “occupying” “clear and unambiguous and thus determine[d] the extent of coverage using the general, ordinary, plain and popular meaning of the words used in the policy.” Id.
In the case of Westerfield v. LaFleur, 493 So.2d 600 (La.1986), a minor child was struck by an underinsured motorist while she was crossing a highway to board a school bus. At the time of her accident, she was approximately fifteen feet from the bus. The parents of the child brought suit against the bus owner’s UM insurer. Under the policy, an insured person was one who was “in or upon or entering into or alighting from” an insured vehicle. Id. at 603. The trial court held that the child was not covered as an insured because she was not “entering into” the school bus at the time she was struck and killed. The relevant portion of the UM policy read “insured means ... any other person while occupying an insured automobile.” Id. at 602. “[Occupying means in or upon or entering into or alighting from.” Id. at 604. The court noted that “the strictest reasonable interpretation of this clause would require part of the person’s anatomy to touch or penetrate the vehicle before there could be coverage.” Id. at 603. However, the court reasoned that, “It is not physical contact with the vehicle that serves as a basis to determine whether a person is injured while alighting from a vehicle but it is the relationship between the person and the vehicle, obviously of time and in distance with regard to the risk of alighting that determines specific covérage.” Id., quoting Day v. Coca-Cola Bottling Co., Inc., 420 So.2d 518, 520 (La.App. 2 Cir.1982). In determining there was coverage, the supreme court stated:
The process by which a child crosses an open highway to board a school bus is charged with danger. Accordingly, the legislature has enacted the most strin *447 gent provisions feasible to safeguard the entire operation. The child, the bus and the bus driver are constituents of the process, bound together legally and practically in a special, exigent relationship, from the moment the bus stops and signals until the child is safely aboard. Because parties entering contracts of insurance on school buses should be and probably are aware of all these matters, it reasonably may be inferred that they intend “entering into” a school bus to include the entire typical process by which a child traverses a roadway to a safe place within the bus.
Id. at 605-6.
In White v. Williams, 563 So.2d 1316 (La.App. 3 Cir.), writ denied, 568 So.2d 1056 (La.1990), we examined an instance in which a plaintiff was struck by an uninsured motorist returning to his car after paying for the gas he pumped at a service station. Similar to this case, his UM policy defined “occupying” as “in, on, getting into or out of.” Id. at 1318. In finding coverage, we stated:
[T]he court is of the opinion that plaintiff had never abandoned his relationship as passenger of the insured vehicle. His physical departure was solely for the purpose of performing an act that was physically and directly related to the car. He never turned aside from this mission and was in fact in the process of resuming his physical contact with the vehicle when injured.

Id.

Whether the particular language of a contract is ambiguous depends on the facts to which the trier of fact is attempting to apply the language and the intentions of the parties at the time they executed the contract. Police officers are required to enter and exit their vehicles many times per day, oftentimes along busy highways and under less than desirable conditions. Parties insuring police vehicles libare almost certainly aware of this and, as such, it may reasonably be inferred that they intended “getting in” to encompass the special exigent relationship between an officer and his vehicle. We acknowledge that this relationship is limited by space and time; however, we do not feel that Sergeant Ashy has exceeded the scope of this relationship in the case at bar. After considering all of the evidence and the jurisprudence, we conclude that coverage is afforded Sergeant Ashy and, therefore, summary judgment was improperly granted.
We need not address the third assignment of error as our foregoing reasoning is dispositive of the issue of coverage.
CONCLUSION
For the preceding reasons, the judgment of the trial court is affirmed insofar as it holds that Sergeant Ashy was not an insured under his employer’s uninsured motorist policy. The trial court’s judgment is set aside insofar as it holds that Sergeant Ashy was not occupying his vehicle at the time of the accident. Costs of this appeal are assessed against the defendant-appellee, National Casualty Insurance Company.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

. An association is the act of a number of persons in uniting together for some special purpose or business. It is a term of vague meaning used to indicate a collection or organization or organization of persons who have joined together for a certain or common object. Blacks Law Dictionary 121 (6th ed.1991).